**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **VILLAS AT PARKSIDE PARTNERS** | § | |
| **d/b/a VILLAS AT PARKSIDE,** | § | |
| **LAKEVIEW AT PARKSIDE PARTNERS,** | § | |
| **LTD. d/b/a LAKEVIEW AT PARKSIDE,** | § | |
| **CHATEAU RITZ PARTNERS d/b/a** | § | |
| **CHATEAU DE VILLE, MARY MILLER** | § | |
| **SMITH, ET. AL.,** | § | |
| | § | **CIVIL ACTION NO. 3-08-CV-1551-B** |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **THE CITY OF FARMERS BRANCH,** | § | |
| **TEXAS,** | § | |
| | § | |
| **Defendant.** | | |

**APPENDIX IN SUPPORT OF VILLAS PLAINTIFFS'
APPLICATION FOR ATTORNEYS' FEES AND COSTS**

1.   Declaration of James S. Renard .........................................................App. 0001 – 0128.

2.   Declaration of C. Dunham Biles .......................................................App. 0129 – 0638.

3.   Declaration of Jack G. B. Ternan.....................................................App. 0639 – 0641.

4.   Declaration of Frank Finn ................................................................App. 0642 – 0729.

Respectfully submitted,

**BICKEL & BREWER STOREFRONT, PLLC**

By:  /s/  C. Dunham Biles
William A. Brewer III
State Bar No. 02967035
James S. Renard
State Bar No. 16768500
C. Dunham Biles
State Bar No. 24042407
Jack G.B. Ternan
State Bar No. 24060707

4800 Comerica Bank Tower
1717 Main Street
Dallas, Texas 75201
Telephone:  (214) 653-4000
Facsimile:  (214) 653-1015

**ATTORNEYS FOR THE VILLAS
PLAINTIFFS**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 8, 2010, I electronically submitted the following document

to the Clerk of the Court for the U.S. District Court for the Northern District of Texas using the

electronic case filing system of the Court. The electronic case filing system sent a "Notice of

Electronic Filing" to individuals who have consented in writing to accept this Notice as service

of this document by electronic means.

/s/ C. Dunham Biles
C. Dunham Biles

5213155.2
8001-152

### IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **VILLAS AT PARKSIDE PARTNERS**<br>**d/b/a VILLAS AT PARKSIDE,**<br>**LAKEVIEW AT PARKSIDE PARTNERS,**<br>**LTD. d/b/a LAKEVIEW AT PARKSIDE,**<br>**CHATEAU RITZ PARTNERS d/b/a**<br>**CHATEAU DE VILLE, and MARY**<br>**MILLER SMITH,** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **CIVIL ACTION NO. 3:08-CV-1551** |
| **Plaintiffs,** | §<br>§ | |
| **v.** | §<br>§ | |
| **THE CITY OF FARMERS BRANCH,**<br>**TEXAS,** | §<br>§<br>§ | |
| **Defendants.** | | |

### DECLARATION OF JAMES S. RENARD IN SUPPORT OF
### VILLAS PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES

1.      My name is James S. Renard.  I am fully competent and qualified in all respects to make this Declaration and to testify about the matters herein.  The facts set forth below are true and correct and, unless otherwise qualified, are based upon my personal knowledge.

2.      I make this Declaration in support of the application of Villas at Parkside Partners d/b/a Villas at Parkside, Lakeview at Parkside Partners, Ltd. d/b/a Lakeview at Parkside, Chateau Ritz Partners d/b/a Chateau De Ville, and Mary Miller Smith (collectively, the "Villas Plaintiffs") to recover reasonable attorneys' fees in the above-captioned action.

**A.      Summary Of My Opinions**

3.      As discussed in greater detail herein, it is my professional opinion that a reasonable attorneys' fee for the necessary legal services provided by Bickel & Brewer Storefront, PLLC in connection with its representation of the Villas Plaintiffs and its successful pursuit of judicial relief in this action is in the amount of at least $750,000.  Indeed, as

demonstrated below, that amount represents less than 60% of the value of the professional time dedicated to the representation of the Villas Plaintiffs in this action. Accordingly, on behalf of the Villas Plaintiffs, I respectfully request that the Court award my clients attorneys' fees in the amount of $750,000.

**B.      My Experience And Qualifications**

4.      I am an attorney licensed by the Supreme Court of the State of Texas in 1981, and I have practiced law for over 28 years.

5.      I am a partner in the law firm of Bickel & Brewer, which is based in Dallas, Texas, and also has an office in New York City. Bickel & Brewer was founded in 1984.

6.      I received my Bachelor of Science degree, *summa cum laude*, from Southern Methodist University in 1978, where I was a National Merit Scholar, served as a research assistant and academic advisor, was elected to Phi Beta Kappa, and was awarded the Senior Book Award for the highest grade point average in the University. I received my Doctor of Jurisprudence degree, with Honors, from the University of Texas School of Law in 1981, where I was elected to the Order of Barristers and Board of Advocates.

7.      I am admitted to practice before the United States District Courts for the Northern, Western, and Eastern Districts of Texas and the United States Courts of Appeals for the Second, Third, Fifth, Seventh, Ninth, Eleventh, and Federal Circuits. Pursuant to orders of admission *pro hac vice*, I have represented clients in lawsuits and adversarial proceedings in state and federal courts located in over half of the states and in the District of Columbia.

8.      I joined Bickel & Brewer as an associate in 1984 after practicing for three years with another Dallas-based firm in the areas of commercial litigation and insurance defense. I became a partner at Bickel & Brewer in 1986, and I have held that position ever since. I am also a member of the Firm's three-person Executive Committee, which is ultimately responsible for

the management of the Firm (including, but not limited to, the establishment of hourly rates and billing policies and procedures).

9.        Since joining Bickel & Brewer in 1984, my practice has been devoted to commercial litigation and dispute-related advice and counseling.   More particularly, I have handled and been involved in cases in a number of substantive areas of law, including, but not limited to, securities, antitrust and trade regulation, mergers and acquisitions, intellectual property (including patents, trademarks, and trade secrets), real estate, insurance, environmental matters, construction, constitutional questions, and general contract and business tort disputes.   I have acted as lead trial counsel and argued appeals in cases in federal and state courts throughout the United States, and I have had first-chair responsibility in various multi-week arbitration hearings within the United States and abroad.

### 1.        Litigation experience warranting the hourly rates in question

10.        For more than two decades, my firm and I have had the privilege of representing clients in some of the largest and most interesting cases in federal and state courts throughout the nation and before domestic and international arbitration panels and tribunals.   Our track record of success has generated a consistent demand for our services.   As a result, we are selective in our choice of clients and accept less than 50% of the matters offered to us.

#### a.        Significant matters

11.        Some of the more recent matters that I have tried as lead trial counsel are:  (1) a 3-week jury in Maryland federal court, in which I successfully prosecuted contract and tort claims on behalf of an Indonesian business entity against a Fortune 500 company and obtained a jury verdict in excess of $10 million in addition to an entitlement to attorneys' fees; (2) an 8-week international arbitration in Hong Kong, in which my partners and I successfully defended a Fortune 500 corporation against contract and tort claims asserted by a public company based in

APP0003

the People's Republic of China, involving an amount in controversy in excess of $100 million; (3) a 3-week jury trial in Louisiana federal court, in which my partners and I successfully prosecuted claims on behalf of Dallas-based public company against a major business insurer and obtained a jury verdict in excess of $3 million in addition to an entitlement to attorneys' fees; (4) a 4-week arbitration in Chicago, in which my partners and I successfully represented a nationally-known public company and obtained an award of $8.5 million in addition to an entitlement to attorneys' fees; (5) a trial in Dallas federal court, in which my partners and I successfully prosecuted claims on behalf of a Dallas-based company against a major insurance carrier and obtained a declaratory judgment with respect to $40 million of coverage; (6) a 2-week arbitration in Seattle, in which my partners and I successfully defended a Fortune 500 company against contract and tort claims having an amount in controversy in excess of $60 million; (7) a 5-week arbitration in Washington, D.C., in which my partners and I successfully represented a Texas corporation against a Fortune 500 company and obtained a permanent injunction prohibiting the construction and opening of a major downtown building; and (8) a 3-week trial in Dallas state court, in which I successfully represented a subsidiary of a major insurance company in obtaining a permanent injunction prohibiting the use of the client's trade secrets.

12. In addition to the foregoing trials and arbitration hearings, I have acted as lead counsel in arguing dispositive motions, jurisdictional motions, and requests for pretrial injunctive relief in a number of courts, including: (1) Arizona state court; (2) California federal and state court; (3) Colorado federal and state court; (4) Connecticut state court; (5) Delaware state and federal court; (6) District of Columbia superior court; (7) Florida state and federal court; (8) Hawaii federal court; (9) Illinois state court; (10) Louisiana federal court; (11) Massachusetts

federal court; (12) Maryland federal court; (13) Minnesota state court; (14) Mississippi state court; (15) Nevada state court; (16) New Jersey federal court; (17) New York federal and state court; (18) Tennessee federal court; (19) Texas federal and state court; (20) Virgin Islands federal court; and (21) Virginia federal and state court.

        **b.**     <u>**Appeals**</u>

     13.    I have also argued or otherwise had primary responsibility for a number of appeals which have resulted in published opinions issued by appellate courts.  Those cases involved, among other areas of substantive law:  (1) securities (*see Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York,* 375 F.3d 168 (2d Cir. 2004)); (2) antitrust and trade regulation (*see Blue Tree Hotels Investment (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,* 369 F.3d 212 (2d Cir. 2004)); (3) patents (*see Bell Communications Research, Inc. v. Vitalink Communications Corp.,* 55 F.3d 615 (Fed. Cir. 1995)); (4) insurance (*see International Ins. Co. v. RSR Corp.,* 426 F.3d 281 (5th Cir. 2005)); (5) trade secrets (*see Board of Regents of the Univ. of Tex. System v. Nippon Telephone and Telegraph Corp.,* 414 F.3d 1358 (Fed. Cir. 2005) and 478 F.3d 274 (5th Cir. 2007)); (6) real estate (*see ECC Parkway J.V. v. Baldwin,* 765 S.W.2d 504 (Tex. App.—Dallas 1989, writ den'd); and (7) municipal law (*see S.O.C. Homeowners Assoc. v. City of Sachse,* 741 S.W.2d 542 (Tex. App.—Dallas 1987, no writ) and *City of Farmers Branch v. Ramos,* 235 S.W.3d 462 (Tex. App—Dallas 2007, no pet.)).

     14.    I have argued appeals before a number of the federal circuit courts of appeal (including the Second, Third, Fifth, Ninth, and Federal Circuits), Texas appellate courts (including the Supreme Court of Texas and three Texas Courts of Appeal), and a number of appellate courts of other states (including the Supreme Court of Delaware and the intermediate appellate courts of New York and Minnesota).  Apart from arguing appeals, I have also been

substantially involved in other appeals before the U.S. Courts of Appeal for the Seventh and Eleventh Circuits and the appellate courts of California and Nebraska.

        c.      **Experience in constitutional and civil rights litigation**

15.    I have significant experience in handling matters involving constitutional and civil rights questions. Over the course of my career, I have defended Texas municipalities in civil rights actions under 42 U.S.C. § 1983 including, but not limited to, cases involving claims of alleged violations of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Indeed, one such case, in which I obtained a judgment on behalf of the City of Garland, Texas, was appealed to the Fifth Circuit, where the judgment was affirmed after oral argument. *See Whitaker v. City of Garland, Texas*, 869 F.2d 1485 (5th Cir. 1989) (without opinion). Furthermore, I was involved in, among other representative cases, the successful defense of the State Fair of Texas in § 1983 litigation. *See Delesma v. City of Dallas*, 770 F.2d 1334 (5th Cir. 1985). I have also: (a) prosecuted claims against officials of the State of Texas challenging the constitutionality of a business regulation statute under the Due Process Clause; (b) represented plaintiffs, and defended a Texas state official, in several federal voting rights cases; and (c) on numerous occasions researched and analyzed the constitutionality of federal and state statutes (including proposed legislation) as well as municipal ordinances.

16.    Furthermore, I represented the Villas Plaintiffs in their successful effort to preliminarily and permanently enjoin the City of Farmers Branch Ordinance 2903 – the predecessor to Ordinance 2952 – in *Villas at Parkside Partners, et. al. v. The City of Farmers Branch*, Civil Action No. 3:06-CV-2371-L, in the United States District Court for the Northern District of Texas (Lindsay, J.).

17.    As a managing partner of Bickel & Brewer, I am consulted on virtually every case in which constitutional issues arise in connection with litigation being handled by Bickel &

APP0006

Brewer and Bickel & Brewer Storefront, PLLC (described below in Section C.).   In those constitutional and civil rights matters, my time has typically been recorded (and charged to fee-paying clients) at my full hourly rate.

       **d.**      **Professional activities and recognitions**

    18.   I have spoken at a number of law and industry conferences, seminars, and symposia during the course of my career, including presentations in Dallas, Houston, New York, Chicago, Phoenix, and at Cornell University and Baylor Law School.  I have authored several published papers and articles.  Furthermore, I have consistently been listed among the Business Litigation "Texas Super Lawyers" by Texas Monthly Magazine (which I understand to be a peer-voted designation of the top 5% of the attorneys in Texas in their respective fields of expertise), and I was voted one of the top 30 commercial litigators in Dallas in 2001, as reported by D Magazine.

       **2.**      **My qualifications to render opinions on the reasonableness of attorneys' fees**

    19.   I have provided testimony on a number of occasions in support of the reasonableness of my hourly rates and the hourly rates of other Bickel & Brewer attorneys.  Those opinions have been expressed in testimony before courts and juries, in depositions, and in affidavits and declarations.

    20.   In addition, I have been designated by other Dallas-based lawyers as an expert to testify on the reasonableness of their respective attorneys' fees.  My testimony on the subject of attorneys' fees has never been excluded, nor have I ever been found to lack the qualifications to render such opinions.

C.   **Bickel & Brewer Storefront:  Representing The Villas Plaintiffs In This Important Matter Of Public Policy And Constitutional Law**

21.   The Villas Plaintiffs are and, at all times pertinent hereto, have been represented in the above-captioned action by Bickel & Brewer Storefront, PLLC ("Bickel & Brewer Storefront").  A true and correct copy of the engagement letters between Bickel & Brewer Storefront and the Villas Plaintiffs are attached hereto as Exhibits "A" and "B."

22.   Bickel & Brewer Storefront was established by the Bickel & Brewer law firm in October 1995, and was founded in response to the widening gap between the need for quality legal services and the availability of such services to the economically challenged and to those in need of representation in important matters of public policy.  Because most, if not all, of Bickel & Brewer's professionals contribute a portion of their time and talents to Bickel & Brewer Storefront, the Storefront is able to provide individuals and businesses the same range of legal services that are offered to Bickel & Brewer's paying clients.  Bickel & Brewer attorneys, consultants, and litigation support staff volunteer their time to the Bickel & Brewer Storefront to achieve that end.

23.   The attached engagement letters set forth the terms of the attorney-client relationship and fee agreement between Bickel & Brewer Storefront and the Villas Plaintiffs.  As those letters demonstrate, Bickel & Brewer Storefront will receive compensation for its services in this matter *only if* the Villas Plaintiffs obtain:  (a) a damages recovery net of litigation expenses; or (b) an award of attorneys' fees.  Because Villas Plaintiffs obtained a permanent injunction in lieu of damages, Bickel & Brewer Storefront will not be compensated absent this Court's award of fees.

24.   Attorneys' fees awarded to the Bickel & Brewer Storefront are first applied to pay the costs of operating that public interest endeavor.  Any profits that flow from the Bickel &

Brewer Storefront go to the Bickel & Brewer Foundation, a 501(c)(3) organization that funds various charitable programs in the Dallas community. One of the most important programs created and sponsored by the Brewer & Brewer Foundation is the Bickel & Brewer Future Leaders Program (FLP), which is an educational partnership among the Dallas Independent School District and four of the Dallas area's premier private schools. Founded in 2001, FLP provides an academic tutoring and mentoring program to over 160 talented and deserving Hispanic and African-American 5th-12th grade public school students from economically disadvantaged sectors of Dallas.

25.     The Bickel & Brewer Foundation also funds the Bickel & Brewer Latino Institute for Human Rights at New York University School of Law (the "Latino Institute"). The Latino Institute provides aspiring lawyers with full scholarships to NYU Law School. In return for their scholarships, recipients agree to work for two years after graduation in organizations that promote social justice or human rights in the Latino community.

26.     Attached hereto as Exhibit "C" is a copy of the Bickel & Brewer Foundation's Community Report which describes FLP, the Latino Institute, and the other educational and charitable programs supported by the Foundation.

**D.     Prevailing Parties:  The Villas Plaintiffs' Entitlement To Attorneys' Fees**

27.     The Villas Plaintiffs were the first of the consolidated plaintiffs in the above-captioned action to file suit for declaratory and injunctive relief with respect to the City of Farmers Branch's unconstitutional Ordinance 2952. The Villas Plaintiffs obtained a temporary restraining order prohibiting the effectuation and enforcement of Ordinance 2952 on September 12, 2008 – the day before Ordinance 2952 was scheduled to take effect. That same day, the Reyes Plaintiffs (CA No. 3:-08-CV-01615-B) filed a separate suit, which was ultimately consolidated into this first-filed action.

28.     Plaintiffs sought declaratory and injunctive relief in the above-captioned action pursuant to, *inter alia*, 42 U.S.C. §§ 1981 and 1983, for the purpose of establishing the unconstitutionality of the City of Farmers Branch Ordinance 2952 and to restrain and enjoin the City's effectuation, implementation, and enforcement of that Ordinance.[1]  As reflected in their pleadings and briefs, all of the claims asserted by the Villas Plaintiffs in this action arose out of a common nucleus of operative facts.

29.     In its Memorandum Opinion and Order, dated March 24, 2010, 2008, the Court granted in part Villas Plaintiffs' motion for summary judgment "on the grounds that the Ordinance is preempted as a regulation of immigration."[2]  Further, because preemption "provides sufficient grounds to enjoin the enforcement of [Ordinance 2952] in all applications, the Court decline[d] to consider the remaining claims asserted in the motions for summary judgment or partial summary judgment."[3]  Accordingly, the Court ordered "that the City of Farmers Branch, Texas, and its officers, agents, servants, employees, representatives, and attorneys are hereby permanently enjoined and prohibited from effectuating or enforcing Ordinance 2952."[4]  On March 25, 2010, the Court entered Final Judgment based on its prior Order.[5]

30.     In addition to the relief that the Court has already provided, Villas Plaintiffs seek an award of attorneys' fees pursuant to 42 U.S.C. § 1988 and any other applicable statute.[6]

---

[1] *See* Plaintiffs' Original Complaint and Jury Demand ("Complaint"), dated September 3, 2008, at 48 (Docket No. 1).

[2] Memorandum Opinion and Order (the "Order") at 39 (Docket No. 177).

[3] *Id.* at 40.

[4] *See id.* at 40.

[5] *See* Final Judgment (Docket No. 179).

[6] *See* Complaint at 48.

Section 1988(b) of Title 42 of the United States Code provides, in pertinent part: "In any action or proceeding to enforce a provision of sections 1981 [and] 1983 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . ."[7]  The Villas Plaintiffs now request an award of attorneys' fees and litigation costs.

**E.      Fair Compensation For Righting A Wrong:  The Value Of The Legal Services Bickel & Brewer Storefront Has Provided To The Villas Plaintiffs.**

       **1.      The work performed and the services rendered**

31.      In connection with their representation of the Villas Plaintiffs in the above-captioned action, Bickel & Brewer Storefront and the attorneys and other professionals who volunteered to assist in this matter provided valuable services with respect to the investigation, preparation, presentation, prosecution, and litigation of Villas Plaintiffs' claims.  Among other important tasks, those professionals:  (a) prepared necessary pleadings, motions, briefs, and supporting affidavits and exhibits; (b) conducted legal research into a number of relevant issues involving immigration law, due process, and the municipal regulation of immigration-related matters; (c) interviewed and communicated with witnesses and client representatives; (d) prepared, served, and responded to written discovery requests; (e) prepared for, defended, and took numerous depositions; (f) conducted factual research regarding Farmers Branch's Ordinance No. 2952 and the City's activities relating thereto; and (g) participated in hearings and discussions among counsel.

---

[7] *See* 42 U.S.C. § 1988(b).

APP0011

32.     A total of twenty (20) Bickel & Brewer professionals (consisting of thirteen attorneys, two law clerks, one consultant, and four in-house investigators) provided the foregoing services.[8]

33.     As with all client matters on which they work, those twenty professionals kept daily track of the time (expressed in one-tenth of an hour increments) that they devoted on this case in providing professional services to the Villas Plaintiffs.  Those daily entries, which included a description of the services performed, were input into Bickel & Brewer's computerized billing system.  Because the terms of the engagement letters between Bickel & Brewer Storefront and the Villas Plaintiffs (Exhibits "A" and "B") do not provide for ongoing client payment of hourly fees (but, rather, make compensation contingent on certain favorable outcomes), monthly fee statements were not finalized and sent to the Villas Plaintiffs.  Nevertheless, draft cumulative fee statements relating to this action were prepared from Bickel & Brewer's computerized billing system, a true and correct copy of which (redacted to avoid the waiver of any information protected by the attorney-client privilege or attorney work product doctrine) are attached hereto as Exhibits "D" and "E."[9]  The draft fee statements reflect the professional time devoted to this matter only through March 30, 2010.

---

[8] In addition, the invoices for this matter include time entries for Firm employees Andrea Burnett, Jennifer Clarke, and Travis Carter, who engaged in public relations efforts regarding this litigation.  Villas Plaintiffs are not seeking an award based on the services performed by those individuals, and their services are not included in the figures or calculations set forth herein.

[9] The draft fee statements attached hereto as Exhibits "D" and "E" constitute records of the daily time entries of the Bickel & Brewer professionals who worked on this matter on behalf of the Villas Plaintiffs.  Each daily time entry for each professional includes a description of the work and services performed and the time (expressed in tenths of an hour) devoted to those activities.  Those daily entries were made by Bickel & Brewer professionals in the ordinary course of Bickel & Brewer's business, and it was the regular practice of Bickel & Brewer to record such time entries into the Firm's computerized billing system.  That system has the capability of accumulating and printing those daily time entries for all professionals working on

APP0012

2. **The calculation of the amount of requested fees**

34.     As reflected in Exhibits "D" and "E," the total dollar value of the *recorded* professional time devoted to the representation of the Villas Plaintiffs in this action through March 2010, is $1,263,928.50.  That figure is the product of the total recorded time devoted to this matter during that period, as expressed in hours (2,533.7 hours), multiplied by the then-prevailing hourly billing rates of the individual professionals who provided those services (which ranged from $210 to $800 per hour).  That figure does not, however, include:  (a) over $270,000 of third-party and Bickel & Brewer in-house costs and expenses incurred on the Villas Plaintiffs' behalf in representing their interests in this matter; (b) the valuable time contributed by my partner, William A. Brewer III, who successfully oversaw and directed the representation of the Villas Plaintiffs (and who, despite having an hourly billing rate higher than mine, chose not to bill any of the time that he devoted to this matter);[10] and (c) the time devoted to this case following March 30, 2010.

35.     Notwithstanding that the total value of the professional time *actually* expended in this matter *exceeds* $1,263,928.50, and solely in the interest of conservatism, we are excluding from the Villas Plaintiffs' fee application the value of the professional time devoted by all but three (3) of the twenty (20) Bickel & Brewer professionals who provided services in this matter. The value of the professional time dedicated to this action by the excluded seventeen

---

a given matter over any period of time, whether monthly, cumulatively, or otherwise.  As a partner and member of the three-person Executive Committee of Bickel & Brewer, I am one of the custodians of the records produced by the Firm's billing system, including the draft cumulative fee statements attached hereto as Exhibits "D" and "E."

[10] It is my professional opinion, however, that the fees attributable to the services performed by Mr. Brewer would be at least $50,000.

professionals is $292,596.00 (which, as noted above, does not include the value of Mr. Brewer's unbilled time).

36.    Subtracting that amount from the total of $1,263,928.50 leaves $971,332.50 – which represents the value of the professional time devoted by the remaining three members of the Bickel & Brewer Storefront 20-member team of professionals who worked on Villas Plaintiffs' behalf in this matter.  Those three professionals, all of whom are lawyers admitted to practice in the State of Texas and in the Northern District of Texas, are:  (a) James S. Renard; (b) C. Dunham Biles; and (c) Jack G. B. Ternan.  Brief biographical summaries of each of those attorneys' educational and professional backgrounds are collectively attached hereto as Exhibit "F."[11]

37.    As reflected in the draft fee statements attached hereto as Exhibits "D" and "E," the hourly rates attributable to each of the three lawyers identified above are as follows:  (a) James Renard – $800; (b) Dunham Biles (Senior Associate and 10-year lawyer) – $550-$575; (c) Jack Ternan (Associate) – $275-$425.  Those hourly rates were the prevailing rates typically charged by Bickel & Brewer to its clients for those lawyers' services during the relevant time period.

38.    The total time dedicated to this action by the three above-identified attorneys through March 2010, is 1,845.2 hours.  As a reflection of the policy of Bickel & Brewer and Bickel & Brewer Storefront to make effective use of associates (whose hourly rates are lower than those of partners), over 85% of those hours (1,582.9 hours) represent work performed by the associates – Dunham Biles and Jack Ternan.

---

[11] See also Declaration of C. Dunham Biles in Support of Villas Plaintiffs' Application for Attorneys' Fees and Costs; Declaration of Jack G. B. Ternan in Support of Villas Plaintiffs' Application for Attorneys' Fees and Costs.

DECLARATION OF JAMES S. RENARD IN SUPPORT OF
VILLAS PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES                                   PAGE 14

39.     In the further interest of conservatism, we have reduced the total value of the hourly fees attributable to the three above-identified attorneys by an additional $221,332.50. That leaves $750,000 – which is the net amount that the Villas Plaintiffs seek pursuant to their application for attorneys' fees in this matter.

**F.      The Reasonableness Of The Requested $750,000 Fee**

40.     I am generally familiar with the standards applicable to an award of attorneys' fees in federal civil rights cases.  Specifically, I understand that the initial step in determining statutory attorneys' fees is to calculate a "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.[12]  I also understand that the second step is to consider whether the lodestar should be adjusted upward or downward, depending on the circumstances of the case and the so-called *Johnson* factors.[13]

**1.      Lodestar analysis**

41.     I have practiced law in Dallas, Texas for nearly twenty-nine (29) years.  During that period, I have become familiar with the range of hourly rates charged by lawyers and firms engaged in the practice of law in Dallas.  I have also become familiar with the range of hourly rates charged by firms, such as Bickel & Brewer, having a "national" litigation practice – that is, those firms that represent parties in large, complex commercial cases in state and federal courts throughout the United States.  Based on the foregoing, it is my opinion that the hourly rates set forth in the draft fee statements attached hereto as Exhibits "D" and "E" are fair and reasonable, and are in line with and within the range of the hourly rates charged by other firms which have a similar practice representing comparable clients in comparable cases.

---

[12] *See McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 284 (5th Cir. 2008).

[13] *Id.*; *see also Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-9 (5th Cir. 1974).

42.     It is also my opinion that the number of hours devoted to the representation of the Villas Plaintiffs in this action, as reflected in the draft fee statements attached hereto as Exhibits "D" and "E" with respect to the three attorneys in question, were necessary for the successful prosecution of the Villas Plaintiffs' claims and to obtain the relief requested in connection therewith.

43.     Based on the foregoing, it is my opinion that a lodestar amount of $750,000 represents a fair and reasonable fee for the services provided by Bickel & Brewer Storefront in this action.

44.     Given the Villas Plaintiffs' request for $750,000 in fees and the number of hours that the three attorneys in question devoted to this action, the effective hourly rate for the time that I worked on this matter is approximately $618 (my prevailing rate charged to fee-paying clients during the period in question was $800-$850 per hour), Mr. Biles' effective hourly rate is approximately $442 (his prevailing rate charged to fee-paying clients during the period in question was $550-$575 per hour), and Mr. Ternan's effective hourly rate is approximately $285 (his prevailing hourly rate charged to fee-paying clients during the predominant portion of the period in question was $375-$425). Thus, not only does the Villas Plaintiffs' request for an award of $750,000 in attorneys' fees *exclude* the value of the time of 18 professionals who performed work in this action (including lead counsel, Mr. Brewer), but it also *discounts* the time of the remaining three attorneys (Dunham Biles, Jack Ternan, and the undersigned) by a factor of 23% to their then-prevailing hourly rates. Based upon my experience, as well as my personal knowledge of the contributions that each of those attorneys made to the successful outcome of this action, it is my professional opinion that those effective rates are fair and reasonable.

APP0016

45.     My opinions with respect to the reasonableness of the hourly rates underlying the Villas Plaintiffs' request for attorneys' fees in this action are supported by, among other things, an informal survey conducted in the fall of 2008 and supplemented recently by Bickel & Brewer attorneys under my direction and at my request.  In connection with that investigation we obtained, among other available information (including, but not limited to, published surveys), various fee applications filed with courts in Dallas and Fort Worth.  Our survey revealed that many firms practicing in Dallas charge hourly rates for a number of partners in the range of $600 to $900 per hour – with correspondingly lower rates for associates (based upon, *e.g.* years of experience).  Those firms include, but are not limited to, Haynes & Boone, Baker Botts, Akin Gump, McKool Smith, Andrews Kurth, Jones Day, Stutzman Bromberg, Susman Godfrey, Gardere Wynne, Thompson & Knight, and Weil Gotshal.  Indeed, partners in some of those firms charge more than $900 per hour.  Similarly, our survey revealed the following: (1) Gardere Wynne Sewell's hourly rates for associates range from $210 to $450 per hour;[14] (2) Thompson & Knight's rates for associates range from $250 to $500;[15] (3) Andrews Kurth's rates for associates range from $250 to $450;[16] and (4) McKool Smith and Fish & Richardson charge approximately $450 to $500 per hour for eight-year associates.  I understand that Haynes & Boone, Baker Botts, Akin Gump, Jones Day, Stutzman Bromberg, Susman Godfrey, and Weil Gotshal command similar if not higher hourly rates for associates.  Those are the types of firms within Dallas that are most likely to appear opposite us in litigation or vie for the same or similar fee-paying clients in litigation matters in Dallas.

---

[14] *See Of Counsel*, Vol. 27, No. 9, at 122.

[15] *See id.* at 124.

[16] *See id.* at 120.

46.     Wholly apart from the aforementioned survey, I have a general understanding of the hourly rates charged by comparable firms in Dallas engaged in the litigation of cases involving important questions of public policy, complex issues and/or high-stakes.   My knowledge in that regard comes from a number of sources, including:   (a) my review of periodically-published fee surveys and related articles; (b) discussions with Bickel & Brewer lawyers who have worked at other firms or who, themselves, have information about the hourly rates of such firms; (c) my review of the fee statements of other firms in the ordinary course of my practice; (d) information obtained from current clients and prospective clients concerning the rates charged by our competitors; and (e) discussions with attorneys' fees experts who have previously expressed opinions in support of Bickel & Brewer's fees.

47.     My opinion is also formed by judicial decisions regarding the reasonableness of Bickel & Brewer's fees.  In *American Permanent Ware Company v. Emerson Elect. Co. d/b/a Chromalox, et al*, Cause No. 00-07351, in the 298th Judicial District Court of Dallas County, Texas, the court awarded Bickel & Brewer's client reasonable and necessary attorneys' fees in the amount of $2,678,904.75 in response to a request for $2,714,904.75. *See id.*, Final Judgment dated June 14, 2004 ("The Court examined the file, took judicial notice of the usual and customary attorneys' fees in Dallas County, Texas and determined reasonable and necessary attorneys' fees to be $2,678,904.75."). That award was based on our then-prevailing hourly rates (including $650 for the partner in charge, $400 for a 5-year associate, and $325 for 3-4 year associates).  Also noteworthy is the fact that the court's award was:  (a) made nearly six years ago and was based upon hourly rates charged prior to 2004; and (b) upheld on appeal to the Court of Appeals for the Fifth District of Texas at Dallas. *See Emerson Elect. Co. v. American Permanent Ware Co.*, 201 S.W.3d 301, 315-317 (Tex. App. – Dallas 2006, no writ).

DECLARATION OF JAMES S. RENARD IN SUPPORT OF
VILLAS PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES                    PAGE 18

APP0018

48.    Further, on March 2, 2010, the United States Bankruptcy Court for the Northern District of Texas (Houser, C.J.) found that the rates charged by Bickel & Brewer are reasonable. *See* Memorandum Opinion and Order, *In re Texans Cuso Insurance Group, LLC*, Case No. 09-35981-BJH-11, in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.[17] The court also found that Bickel & Brewer "enjoys a good reputation for its handling of litigation matters."

49.    Finally, the hourly rates which Bickel & Brewer typically charges clients are, by definition, market rates – that is, they are the rates that our clients agree to pay and at which those clients do, in fact, compensate us. The most accurate reflection of the reasonableness of our hourly fee rates *vis-à-vis* the quality of the services we provide is the fact that the demand for our services (which is billed at those rates) far exceeds our capacity to take on every prospective client who seeks to retain us.

2.    **The *Johnson* factors**

50.    It is also my opinion that the *Johnson* factors strongly militate in favor of an upward adjustment of the lodestar amount.[18] More specifically:

---

[17] The Bankruptcy Court found "that the Firm charged [its client] its normal hourly rates and that the rates charged are reasonable, although on the high side." The "reasonable rates" discussed in the order included: (1) $900 per hour for a partner; (2) $450 per hour for two associates practicing for fewer years than Dunham Biles and who were not senior associates; and (3) $375 per hour for an associate who graduated in the same law school class at the University of Texas School of Law as Jack Ternan.

[18] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney(s) due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 488 F.2d at 717-719. Although the United States Court of Appeals for the Fifth Circuit continues to list "contingency" as a *Johnson* factor, the United States Supreme Court has held that a contingency

(a)     The lodestar amount reflects less than 60% of the value of total professional time dedicated to the pursuit of the Villas Plaintiffs' claims in this action.  Moreover, the lawyers working on this action obtained substantial information about the City of Farmers Branch's attempts to regulate immigration by virtue of Bickel & Brewer Storefront's representation of another client in state court litigation involving violations of the Texas Open Meetings Act and by representing some of the Villas Plaintiffs in their prior federal litigation against the City of Farmers Branch.  The professional time dedicated to those related lawsuits is <u>not</u> included in the $750,000 fee request in this action.

(b)     This action involved novel questions of constitutional law and the relationship between the federal government and municipalities, as demonstrated by the substantial publicity and public interest that this case has generated.  Of equal importance, the successful representation of the Villas Plaintiffs in this action required an extraordinary amount of legal research and analysis involving difficult questions in a number of substantive areas of law, including, but not limited to, supremacy and preemption, due process (including "void for vagueness" principles), the complex scheme of federal immigration law (involving statutes, regulations, and court and administrative adjudications), and federal housing laws.

(c)     Given the complexity of the issues and the extent to which the City of Farmers Branch vigorously defended Ordinance 2952 and opposed the relief requested (assisted, as I understand, by one or more "immigration reform" organizations), the successful representation of the Villas Plaintiffs required a high level of skill and competence.  Obviously, the Court

---

agreement should not serve as a basis for adjusting an attorney fee award. *See City of Burlington v. Dague*, 505 U.S. 557, 566 (1992).  Further, *Johnson* factors subsumed in the initial lodestar calculation should not be double counted. *See Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998).

observed the quality of the legal work in this case and undoubtedly appreciates the amount of preparation involved in presenting the Villas Plaintiffs' claims.

(d)     The professional time dedicated to the representation of the Villas Plaintiffs in this matter precluded the attorneys in question from pursuing billable, fee-paying tasks on other matters.  During the pendency of this action, Bickel & Brewer's attorneys operated at 100% capacity.  During the 25 years that I have practiced law at Bickel & Brewer, I have averaged approximately 2,800 billable hours per year.  That is also representative and typical of the average hours billed annually by Bickel & Brewer associates and my other partners.  Indeed, most of our attorneys annually surpass 2,400 hours per year.  In light of the foregoing facts, when Bickel & Brewer attorneys represent Bickel & Brewer Storefront clients, the time spent directly reduces the number of working hours available to those professionals to devote to fee-paying matters.  In fact, since its establishment in 1995, Bickel & Brewer Storefront has provided well over $20 million in uncompensated professional time in representing economically-challenged individuals and others in need of representation in important matters of public policy.  During that same period, Bickel & Brewer has literally turned down dozens of potential fee-paying cases and clients annually because the demand for our services has exceeded our available supply of professional time to represent those prospective clients in accordance with our standards.

(e)     The total fees sought by the Villas Plaintiffs are less than the value of the professional time actually devoted to this matter and, in any event, the hourly rates of the

APP0021

attorneys in question are comparable to those charged by other national firms litigating complex questions in courts in Dallas and elsewhere.

(f)     Given that a substantial portion of the legal work provided by Bickel & Brewer Storefront in this action was performed under time constraints – including the preparation, filing, and prosecution of an application for a temporary restraining order and a preliminary injunction – the attorneys involved were required to rearrange their professional schedules and devote an extraordinary amount of time in order to meet deadlines and ensure that the clients' interests were properly served.

(g)     As set forth in the declarations supporting their request for injunctive relief, the Villas Plaintiffs stood to suffer irreparable injury and a substantial loss of business in the absence of such relief.  They, of course, were successful not only in restraining the subject ordinance, but in obtaining a permanent injunction prohibiting it from ever taking effect.

(h)     Bickel & Brewer enjoys a national reputation of successfully representing clients in large, complex cases, and the Bickel & Brewer Storefront has earned a reputation for obtaining successful results in litigation involving the public interest – especially in cases involving governmental action impacting the Dallas-Fort Worth Metroplex.  Such success could only be achieved through the efforts of experienced and able lawyers.

(i)     In opposing the multiple attempts by the City of Farmers Branch to implement unconstitutional ordinances regulating immigration, Bickel & Brewer Storefront and the attorneys involved in this case were subjected to harsh criticism from certain elements of the community.  Put simply, the representation of the Villas Plaintiffs in this action was not a particularly "popular" undertaking.  Nevertheless, we chose to challenge Ordinance 2952 as a

APP0022

matter of principle and in furtherance of the objectives on which the Bickel & Brewer Storefront was founded.

**G.     Conclusion And Request For Relief**

51.     Based upon the facts set forth above, it is my opinion that a reasonable attorneys' fee for the services provided by Bickel & Brewer Storefront in connection with its representation of the Villas Plaintiffs and its successful pursuit of judicial relief in this action – which stopped the effectuation and enforcement of an unconstitutional municipal ordinance that would have detrimentally affected a substantial number of persons and businesses – is in the amount of at least $750,000.

52.     I declare under penalty of perjury that the foregoing is true and correct.

Executed on April __8__, 2010.

James S. Renard

**DECLARATION OF JAMES S. RENARD IN SUPPORT OF**
**VILLAS PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES**          **PAGE 23**
5212951.6
8001-152

APP0023

# EXHIBIT
# A

# BICKEL & BREWER STOREFRONT, PLLC

ATTORNEYS AND COUNSELORS
2802 MARTIN LUTHER KING, JR. BLVD.
DALLAS, TEXAS 76215
(214) 421-4800

www.bickelbrewer.com

757 Fifth Avenue
50th Floor
New York, New York 10153
(212) 489-1400

October 10, 2008

**CONFIDENTIAL AND PRIVILEGED
ATTORNEY-CLIENT COMMUNICATION**

<u>**Via Facsimile:  (714) 520-0620**</u>

Mr. Edward Frankel
434 Euclid Street
Anaheim, California 92802

Re:   *Villas at Parkside Partners d/b/a Villas at Parkside, Lakeview at Parkside Partners d/b/a Lakeview at Parkside, Chateau Ritz Partners d/b/a Chateau De Ville, and Mary Miller Smith v. The City of Farmers Branch, Texas*, Civil Action No. 3:08-CV-1551, In the United States District Court, Northern District of Texas, Dallas Division.

Dear Mr. Frankel:

We are pleased that the Villas at Parkside Partners d/b/a Villas at Parkside, Lakeview at Parkside Partners d/b/a Lakeview At Parkside, and Chateau Ritz Partners d/b/a Chateau De Ville (together, the "Clients") have selected Bickel & Brewer Storefront P.L.L.C. (the "Storefront") to represent them. This letter sets forth the terms of our engagement, including an explanation of the scope of the legal services to be provided, the legal fees and expenses to be charged, and our billing and administrative practices.

A.   **Scope Of Legal Services To Be Provided**

We will represent the Clients in connection with any claims or disputes with The City of Farmers Branch ("Farmers Branch") regarding the lawfulness or effect of Farmers Branch City Ordinance No. 2952 (the "Ordinance"). In the event that any claims are filed against the Clients by Farmers Branch or its agents in the same action, and arising out of the same Ordinance, we will represent the Clients in their defense of those claims.

APP0025

10-10-08   02:36pm   From-                                                    T-316   P.03/07   F-994

Mr. Edward Frankel
October 10, 2008
Page 2

## B.   Legal Fees And Expenses To Be Charged

We recognize that legal representation can be an expensive undertaking. Normally, hourly charges for the professionals associated with the Storefront range from $240 to $1050 per hour. However, our fee for legal services to the Clients in this matter shall be the greater of either any attorneys' fees awarded in connection with our representation or thirty-five percent (35%) of the Net Proceeds (as defined below) of any recovery after the date of this agreement, whether monetary or otherwise and whether by way of settlement, final judgment, or otherwise (the "Agreed Percentage").

The Storefront will be responsible for payment of all expenses associated with this representation, including both third-party disbursements and in-house charges and disbursements ("Expenses"). The Clients agree that all Expenses shall be reimbursed and payable first from the proceeds of any recovery. "Net Proceeds" shall mean the difference of the total gross proceeds recovered, reduced by the total amount of Expenses incurred by the Storefront.

Following reimbursement of Expenses, the Agreed Percentage shall be immediately payable from the Net Proceeds of any such recovery. In the event the recovery involves payments over time or in the future, we shall be entitled immediately to the Agreed Percentage of the present value of such payments discounted at a rate of five percent (5%) per annum. In the event the Clients terminate us as their counsel, we shall continue to be entitled to reimbursement of Expenses incurred as of the termination date as well as to the Agreed Percentage of the Net Proceeds of any recovery you obtain or become entitled to within six (6) months after such termination.

In-house charges for support services may exceed the actual cost of providing such services. The Storefront currently charges from $25.00 to $200.00 per hour for services performed by its support staff. We reserve the right to adjust our rates periodically in the normal course of business. In-house services consist of, but are not limited to, the following:

Litigation support services;[1]
Messenger service;

---

[1] The function of Bickel & Brewer's litigation support staff is to assist the attorneys and consultants during the representation. The staff's billing rates range from $40.00 to $200.00 per hour. The staff's responsibilities encompass, but are by no means limited to: 1) reviewing, organizing, and maintaining all documents relating to the representation; 2) indexing, imaging, and maintaining quality control of all documents; 3) assisting with document productions; 4) creating privilege logs; 5) conducting research assignments; 6) assisting in preparation for depositions, hearings, and trial; 7) summarizing depositions; 8) cite checking legal briefs; and 9) providing technical support.

APP0026

Mr. Edward Frankel
October 10, 2008
Page 3

Photocopy charges;
Secretarial and staff overtime;
Telecommunication charges; and
Word processing.

Third-party expenses consist of but are not limited to the following:

Court reporting services;
Electronic research;
Expert fees;
Express mail;
Filing fees;
Outside copy and imaging services;
Process service; and
Travel expense.

To minimize costs and allow us to work at maximum efficiency, we intend to image and abstract all documents and materials gathered in connection with this matter. Imaging is the means by which computer-stored images are maintained in reprographic form. Abstracting allows us to identify, locate, and review imaged materials quickly, efficiently, and cheaply. The benefits of imaging and abstracting include: (1) substantial reduction in time and expense locating documents; and (2) reduction of some copying costs. We generally outsource imaging work. Typically, we use I & A International, a company which is owned in part by partners of Bickel & Brewer, to provide the document abstracting. Of course, the Clients are free to select another service if they are willing to pay for such service. If we do not hear from the Clients to the contrary, we will image and abstract all relevant documents. Should the Clients desire more information on this subject, Michael J. McCormack, the Firm administrator, would be glad to provide additional detail.

C.   **Billing Practices**

In conformity with the standards of our profession, the Storefront is undertaking to represent the Clients with all due care. The Storefront has not and will not guarantee that any certain result will be obtained. It is agreed that the Clients are not relying on statements, if any, concerning potential results or the strength of any claim as a basis for retaining the Storefront, or for entering into this agreement. Please be advised that the State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys. Although not every complaint against or dispute with a lawyer involves professional misconduct, the State Bar Office of General Counsel will provide information about how to file a complaint. For more information, please call 1-800-932-1900. This is a toll-free phone call.

APP0027

Mr. Edward Frankel
October 10, 2008
Page 4

**D.    Storage And Retention Of Records And Files**

From time to time, we may store documents and other materials relating to this representation that we do not need on a day-to-day basis with a third-party off-site storage vendor. The Clients agree to pay the cost of removing the documents from storage should they request that the stored files be returned to them after the conclusion of the representation.

Following the conclusion of our representation, we will keep confidential any non-public information that we retain in accordance with applicable rules of professional conduct. At the Clients' request, we will return their papers and property to them promptly on receipt of payment for outstanding fees and costs. For various reasons, including the minimization of unnecessary storage expenses, we reserve the right to destroy or otherwise dispose of any such documents or other materials after a reasonable time and without further notice after the termination of the engagement.

**E.    Tax Implications**

Tax implications may arise from this engagement, including, but not limited to, the taxation of any monetary recovery or settlement. The Storefront will not provide tax advice. The Clients should seek the counsel of an accountant or tax attorney to advise them as to the consequences of a recovery or settlement of the case.

**F.    Arbitration Of Fee Disputes**

Should any dispute arise regarding the terms or conditions of this agreement or the fees, costs, or expenses payable thereunder, all parties hereby agree that the dispute shall be referred to arbitration by an arbitrator appointed by the American Arbitration Association. For example, if the Clients receive real or personal property or intangible or illiquid assets by way of settlement, and we are unable to agree on their fair value, an arbitrator will set the fair value for division purposes. The decision of the arbitrator shall be binding and non-appealable.

Before agreeing to arbitration, we urge the Clients to discuss the advantages and/or disadvantages of arbitration with independent counsel as they deem appropriate. You acknowledge that the Clients have had an opportunity to seek independent legal advice regarding this arbitration agreement.

**G.    Attorneys' Fees**

In the event the Storefront brings a legal proceeding to enforce any provision of this Agreement, the Storefront, if successful in such proceeding, shall be entitled to recover from the Clients, in addition to any other available remedy, its reasonable attorneys' fees and costs (including, without limitation, litigation costs, expenses, and legal and expert fees) incurred in such proceeding, including any appeals and any proceedings to enforce any judgment rendered.

APP0028

Mr. Edward Frankel
October 10, 2008
Page 5

**H.      Agreements Regarding Joint Representation/Potential Conflict**

We have been asked to represent Villas at Parkside Partners, Ltd. d/b/a Villas at Parkside, Lakeview at Parkside Partners, Ltd. d/b/a Lakeview at Parkside, and Chateau Ritz Partners, Ltd. d/b/a Chateau De Ville (together, the "Villas Plaintiffs") and Mary Miller Smith in this matter. Villas Plaintiffs have represented to us that they are not aware of any actual conflicts of interest between the Villas Plaintiffs and Mary Miller Smith which would cause their interests to be materially and directly adverse to one another or which would adversely limit our responsibilities to each of you. Based on this representation, we are prepared to represent both you and the Villas Plaintiffs in accordance with the terms herein.   However, it is important that you understand that such joint representation presents at least the potential for conflict.

Simultaneous representation of parties whose interests in litigation are not actually materially and directly adverse but where the potential for conflict exists, such as co-plaintiffs or co-defendants, is permitted so long as it reasonably appears that our firm's responsibilities to both of you will not be or become adversely limited.   An impermissible conflict may exist or develop by reason of substantial discrepancy in the parties' testimony or incompatibility in positions in relation to an opposing party.   A conflict may also develop because of the fact that there are substantially different possibilities of settlement of the claims or liabilities in question. Each of you agree that we cannot participate in making an aggregate settlement of the claims of or against all of you unless each of you has consented after consultation, including disclosure of the existence and nature of all the claims involved and of the nature and extent of the participation of each person in the settlement.   If a conflict arises after representation has been undertaken and cannot be eliminated, you understand that it may be incumbent upon us to withdraw entirely and we will not be in a position to represent some or all of your interests on an ongoing basis.

During the course of this representation, each of you will share with us certain confidential and privileged information.   Such information will, of course, be subject to disclosure to each of the other parties that we represent in this matter.   You agreed that we are free to exchange all information that we gain in the course of this representation with each of you as we deem necessary.

By your signature below, you acknowledge that: (a) you understand that potential conflicts exist with this joint representation; (b) you will notify us immediately if you believe that an actual conflict exists which may adversely limit our ability to represent any and all of your interests; (c) we are permitted to share information received from each of you with any of you as we deem appropriate; (d) should an actual conflict arise, we may be required to immediately withdraw and you will be required to retain other counsel. In executing this retainer letter you will be consenting to the above.

10-10-08   02:37pm   From-                                    T-316   P.07/07   F-994

Mr. Edward Frankel
October 10, 2008
Page 6

        Before executing such consent we urge you to consider this matter with independent
counsel as you deem appropriate.

        Please sign below to memorialize the terms of our agreement and return same to us. We
will be retained as soon as we receive the executed return of this letter.

        We look forward to the opportunity to be of service to the Clients. If you have any
questions regarding the terms of this engagement letter, please do not hesitate to call.

                                Sincerely,

                                **BICKEL & BREWER STOREFRONT PLLC**

                                By: _William A. Brewer III /scc_
                                    William A. Brewer III
                                    For the Storefront


**AGREED AND ACCEPTED:**

**VILLAS AT PARKSIDE PARTNERS**

By: _Ed Frankel Trustee GP_   Date: _10|16|08_
    Authorized Agent and Representative

**LAKEVIEW AT PARKSIDE PARTNERS**

By: _Ed Frankel Trustee GP_   Date: _10|16|08_
    Authorized Agent and Representative

**CHATEAU RITZ PARTNERS**

By: _Ed Frankel Trustee GP_   Date: _10|16|08_
    Authorized Agent and Representative


5170066.2
9001-152

APP0030

# EXHIBIT
# B

APP0031

# BICKEL & BREWER STOREFRONT, PLLC

ATTORNEYS AND COUNSELORS
2802 MARTIN LUTHER KING, JR. BLVD.
DALLAS, TEXAS 75215
(214) 421-4800

Writer's Direct Dial: (214) 653-4000
Writer's Email Address: wab@bickelbrewer.com

767 Fifth Avenue
50th Floor
New York, New York 10153
(212) 489-1400

October 10, 2008

CONFIDENTIAL AND PRIVILEGED
ATTORNEY-CLIENT COMMUNICATION

**VIA ELECTRONIC MAIL**
Ms. Mary Miller Smith
4040 Spring Valley Rd., #218D
Farmers Branch, TX 75244

> Re: *Villas at Parkside Partners d/b/a Villas at Parkside, Lakeview at Parkside Partners d/b/a Lakeview at Parkside, Chateau Ritz Partners d/b/a Chateau De Ville, and Mary Miller Smith v. The City of Farmers Branch, Texas,* Civil Action No. 3:08-CV-1551, In the United States District Court, Northern District of Texas, Dallas Division.

Dear Ms Smith:

We are pleased that you have selected Bickel & Brewer Storefront P.L.L.C. (the "Storefront") to represent you. This letter sets forth the terms of our engagement, including an explanation of the scope of the legal services to be provided, the legal fees and expenses to be charged, and our billing and administrative practices.

## A.    Scope of Legal Services To Be Provided

We will represent you in connection with any claims or disputes with The City of Farmers Branch, Texas ("Farmers Branch") regarding the lawfulness or effect of Farmers Branch City Ordinance No. 2952 (the "Ordinance"). In the event that any claims are filed against you by Farmers Branch or its agents in the same action, and arising out of the same Ordinance, we will represent you in their defense of those claims.

In the event of settlement or judgment, we will represent you in connection with any collection proceedings. We will also represent you in the event of any appeal of a judgment on these claims.

Not included in the scope of this agreement are services you may request of us in connection with any other matter, action or proceeding. If during the course of this engagement, there is a change in the scope of services or the fee to be charged, the terms of this engagement will apply unless and until an updated letter of engagement is provided.

Ms. Mary Miller Smith
October 10, 2008
Page 2

**B.      Legal Fees and Expenses To Be Charged**

We recognize that legal representation can be an expensive undertaking.   Normally, hourly charges for the professionals associated with the Storefront range from $240 to $1050 per hour.  However, our fee for legal services to you in this matter shall be any attorneys' fees, costs, and expenses awarded in connection with our representation.  The Storefront will be responsible for payment of all expenses associated with this representation, including both third-party disbursements and in-house charges and disbursements ("Expenses").  In the event you terminate us as your counsel, we shall be entitled to reimbursement of Expenses incurred as of the termination date.

In-house charges for support services may exceed the actual cost of providing such services.     The Storefront currently charges from $25.00 to $200.00 per hour for services performed by its support staff.  We reserve the right to adjust our rates periodically in the normal course of business.  In-house services consist of, but are not limited to, the following:

Litigation support services;[1]
Messenger service;
Photocopy charges;
Secretarial and staff overtime;
Telecommunication charges; and
Word processing.

Third-party expenses consist of but are not limited to the following:

Court reporting services;
Electronic research;
Expert fees;
Express mail;
Filing fees;
Outside copy and imaging services;
Process services; and

---

[1] The function of Bickel & Brewer's litigation support staff is to assist the attorneys and consultants during the representation. The staff's billing rates range from $40.00 to $200.00 per hour. The staff's responsibilities encompass, but are by no means limited to: 1) reviewing, organizing, and maintaining all documents relating to the representation; 2) indexing, imaging, and maintaining quality control of all documents; 3) assisting with document productions; 4) creating privilege logs; 5) conducting research assignments; 6) assisting in preparation for depositions, hearings, and trial; 7) summarizing depositions; 8) cite checking legal briefs; and 9) providing technical support.

APP0033

Ms. Mary Miller Smith
October 10, 2008
Page 3

Travel expense.

To minimize costs and allow us to work at maximum efficiency, we intend to image and abstract all documents and materials gathered in connection with this matter. Imaging is the means by which computer-stored images are maintained in reprographic form. Abstracting allows us to identify, locate, and review imaged materials quickly, efficiently, and cheaply. The benefits of imaging and abstracting include: (1) substantial reduction in time and expense locating documents; and (2) reduction of some copying costs. We generally outsource imaging work. Typically, we use I & A International, a company which is owned in part by partners of Bickel & Brewer, to provide the document abstracting. Of course, you are free to select another service if they are willing to pay for such service. If we do not hear from you to the contrary, we will image and abstract all relevant documents. Should you desire more information on this subject, Michael J. McCormack, the Storefront administrator, would be glad to provide additional detail.

**C.   Billing Practices**

In conformity with the standards of our profession, the Storefront is undertaking to represent you with all due care. The Storefront has not and will not guarantee that any certain result will be obtained. It is agreed that you are not relying on statements, if any, concerning potential results or the strength of any claim as a basis for retaining the Storefront, or for entering into this agreement. Please be advised that the State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys. Although not every complaint against or dispute with a lawyer involves professional misconduct, the State Bar Office of General Counsel will provide information about how to file a complaint. For more information, please call 1-800-932-1900. This is a toll-free phone call.

**D.   Storage and Retention of Records and Files**

From time to time, we may store documents and other materials relating to this representation that we do not need on a day-to-day basis with a third-party off-site storage vendor. You agree to pay the cost of removing the documents from storage should they request that the stored files be returned to them after the conclusion of the representation.

Following the conclusion of our representation, we will keep confidential any non-public information that we retain in accordance with applicable rules of professional conduct. At you request, we will return their papers and property to them promptly on receipt of payment for outstanding fees and costs. For various reasons, including the minimization of unnecessary storage expenses, we reserve the right to destroy or otherwise dispose of any such documents or other materials after a reasonable time and without further notice after the termination of the engagement.

APP0034

Ms. Mary Miller Smith
October 10, 2008
Page 4

## E.    Tax Implications

Tax implications may arise from this engagement, including, but not limited to, the taxation of any monetary recovery or settlement. The Storefront will not provide tax advice. You should seek the counsel of an accountant or tax attorney to advise them as to the consequences of a recovery or settlement of the case.

## F.    Arbitration Of Fee Disputes

Should any dispute arise regarding the terms or conditions of this agreement or the fees, costs, or expenses payable thereunder, including the valuation of any nonmonetary award or settlement, the parties agree to, and shall, resolve the dispute through final and binding arbitration in Dallas, Texas, administered by one independent arbitrator in conformity with the Comprehensive Arbitration Rules and Procedures of JAMS or such other rules of a successor ADR provider mutually agreed to by the parties (the "Rules") in effect at the time such arbitration is commenced.

If the parties can agree upon an arbitrator, the dispute may be arbitrated by that arbitrator. If, within five days after receipt of a demand for arbitration, the parties have not been able to agree upon an arbitrator, then one shall be appointed by JAMS. If appointed by JAMS, the arbitrator must have at least 10 years experience as an arbitrator and/or judge and must not have any conflict of interest. Subject to the right of the prevailing party to seek reimbursement of fees and costs from the other party, the parties agree to share equally the costs, including fees of JAMS and the arbitrator selected or appointed hereunder.

Notwithstanding the foregoing, the prevailing party in any arbitration, suit, or other action arising out of or related to this agreement shall be entitled to recover from the other party all reasonable fees, costs, and expenses incurred by the prevailing party in connection with the arbitration, suit, or other action, including attorneys' fees, experts' fees, expenses, and disbursements, and fees, costs, and expenses related to any arbitration or appeal. The amount of fees and costs to be awarded to the prevailing party shall be determined by the arbitrator. The decision of the arbitrator shall be rendered within a period of sixty days after the confirmation of the arbitrator. The arbitrator shall have the right only to interpret and apply the terms of this agreement and shall not change any terms or deprive any party to this agreement of any rights provided in this agreement. The arbitrator shall apply the substantive law of Texas (exclusive of choice of law principles) in resolving the dispute. The decision of the arbitrator shall be final, binding, and nonappealable.

Before agreeing to arbitration, we urge you to discuss the advantages and/or disadvantages of arbitration with independent counsel as you deem appropriate. You

Ms. Mary Miller Smith
October 10, 2008
Page 5

acknowledge that you have had an opportunity to seek independent legal advice regarding this
arbitration agreement.

### G.    Attorneys' Fees

In the event the Storefront brings a legal proceeding to enforce any provision of this
Agreement, the Storefront, if successful in such proceeding, shall be entitled to recover from you
its reasonable attorneys' fees (including, without limitation, litigation costs, expenses, and legal
and expert fees) incurred in such proceeding, including any appeals and in the enforcement of
any judgment rendered, in addition to any other available remedy.

### H.    Agreements regarding Joint Representation/Potential Conflict

We have been asked to represent Villas at Parkside Partners, Ltd. d/b/a Villas at Parkside,
Lakeview at Parkside Partners, Ltd. d/b/a Lakeview at Parkside, and Chateau Ritz Partners, Ltd.
d/b/a Chateau De Ville (together, the "Villas Plaintiffs") and you in this matter. You have
represented to us that you are not aware of any actual conflicts of interest between you and the
Villas Plaintiffs which would cause your interests to be materially and directly adverse to one
another or which would adversely limit our responsibilities to each of you. Based on this
representation, we are prepared to represent both you and the Villas Plaintiffs in accordance with
the terms herein. However, it is important that you understand that such joint representation
presents at least the potential for conflict.

Simultaneous representation of parties whose interests in litigation are not actually
materially and directly adverse but where the potential for conflict exists, such as co-plaintiffs or
co-defendants, is permitted so long as it reasonably appears that our firm's responsibilities to
both of you will not be or become adversely limited. An impermissible conflict may exist or
develop by reason of substantial discrepancy in the parties' testimony or incompatibility in
positions in relation to an opposing party. A conflict may also develop because of the fact that
there are substantially different possibilities of settlement of the claims or liabilities in question.
Each of you agree that we cannot participate in making an aggregate settlement of the claims of
or against all of you unless each of you has consented after consultation, including disclosure of
the existence and nature of all the claims involved and of the nature and extent of the
participation of each person in the settlement. If a conflict arises after representation has been
undertaken and cannot be eliminated, you understand that it may be incumbent upon us to
withdraw entirely and we will not be in a position to represent some or all of your interests on an
ongoing basis.

During the course of this representation, each of you will share with us certain
confidential and privileged information. Such information will, of course, be subject to
disclosure to each of the other parties that we represent in this matter. You agreed that we are

APP0036

Ms. Mary Miller Smith
October 10, 2008
Page 6

free to exchange all information that we gain in the course of this representation with each of you as we deem necessary.

By your signature below, you acknowledge that: (a) you understand that potential conflicts exist with this joint representation; (b) you will notify us immediately if you believe that an actual conflict exists which may adversely limit our ability to represent any and all of your interests; (c) we are permitted to share information received from each of you with any of you as we deem appropriate; (d) should an actual conflict arise, we may be required to immediately withdraw and you will be required to retain other counsel. In executing this retainer letter you will be consenting to the above.

Before executing such consent we urge you to consider this matter with independent counsel as you deem appropriate.

Please sign below to memorialize the terms of our agreement and return same to us. We will be retained as soon as we receive the executed return of this letter.

We look forward to the opportunity to be of service to you. If you have any questions regarding the terms of this engagement letter, please do not hesitate to call.

Sincerely,

**BICKEL & BREWER STOREFRONT P.L.L.C.**

By: *William A. Brewer III/scc*

William A. Brewer III
For the Storefront

**AGREED AND ACCEPTED:**

**MARY MILLER SMITH**

By: *Mary Miller Smith*       Date: _____

Mary Miller Smith

# EXHIBIT
# C

APP0038



BICKEL & BREWER
FOUNDATION

COMMUNITY REPORT
2008

APP0039



Seeing is believing when it comes to understanding the impact charitable giving can make on young people. Every year the Bickel & Brewer Foundation helps thousands of children through the programs it manages and sponsors.

The four students pictured above take part in the Bickel & Brewer Future Leaders Program (FLP). The FLP now benefits more than 150 students from economically disadvantaged areas within the Dallas Independent School District. The FLP provides these students with academic resources, leadership training, and the skills they will need to succeed in college and beyond. This investment ensures that the FLP not only benefits these students, but also the communities in which they now live.

The sense of achievement instilled in each FLP student is testament to the power of this public-private partnership and is an example of the Foundation's positive impact in the community.

APP0040

# TABLE OF CONTENTS



Bickel & Brewer Future Leaders Program students Taylor Lee (left) and Devyn Wingo benefit from the program's classes in technology training.

Letter to the Community . . . . . . . . . . . . . . . . . . . . . . . . . . . . 04

Bickel & Brewer Foundation . . . . . . . . . . . . . . . . . . . . . . . . 07

Future Leaders Program . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

National Public Policy Forum . . . . . . . . . . . . . . . . . . . . . . . 17

Latino Institute for Human Rights . . . . . . . . . . . . . . . . . . . 21

Bickel & Brewer Storefront . . . . . . . . . . . . . . . . . . . . . . . . . 25

Recognition in the Community . . . . . . . . . . . . . . . . . . . . . . 28

APP0041

We are proud to share this report on the activities of the Bickel & Brewer Foundation. This report shares the progress of our work this past year in the community. It also celebrates our civic partners, clients and friends who helped make it possible.

As our Foundation programs have grown, so too has our vision of what they can contribute in the future. We are dedicated to expanding each of our community initiatives, institutionalizing them, and endowing them for generations to come.

With the support of our community partners, the past year has been both rewarding and inspiring. The Bickel & Brewer Future Leaders Program expanded by more than 50 students, sponsored a variety of new cultural and leadership programs, and formed a new alliance with the Episcopal School of Dallas. We also joined ranks with The Princeton Review, a nationally-recognized college preparatory service.

The Bickel & Brewer / New York University National Public Policy Forum continued to prosper as the only hybrid – written and oral advocacy – national debate contest of its kind. We formed a new partnership with the National Forensic League and strengthened our ties with the National Association for Urban Debate Leagues.

In New York, we continued the development of the Bickel & Brewer Latino Institute for Human Rights at New York University School of Law. We welcomed new scholars to the program and continued to mold a cutting-edge scholastic experience. The aim of the Latino Institute is to arm future lawyers with the skills to be the next generation of great public advocates.

The accomplishments of the past are worth celebrating. They provide us with a solid foundation for the future, and give promise to the possibilities that lie ahead.

Thank you for serving as our partner in the community.

John W. Bickel II

William A. Brewer III



Bickel & Brewer partners not only work together as partners in law, they also work together as partners in service. Their commitment to the community is evident through initiatives like the Bickel & Brewer Storefront, the law firm's public service affiliate.

The Storefront champions a wide array of issues affecting local and national public policy. The Storefront is currently challenging illegal "immigration ordinances" being proposed in the Dallas suburb of Farmers Branch. The Storefront is challenging the ordinances in the courtroom, and in the court of public opinion. An education and advocacy campaign has brought national attention to these pernicious ordinances, even as the Storefront stopped their implementation in court.

"Our social, economic and political institutions are best served by debate, discussion and analysis," says Brewer. "That has never been truer than it is right now, as we embrace increasing change and diversity in our community. The Storefront is proud to continue its mission – to effect long-term, positive change for the future."

BICKEL & BREWER FOUNDATION

Now in its second decade, the Bickel & Brewer Foundation continues its commitment to support programs which address contemporary social problems in order to help those in immediate need, while building programs to provide enhanced opportunities to young people as a means of making a positive impact on the future.

To accomplish these goals, the Foundation supports a broad range of initiatives while maintaining a special emphasis on developing, overseeing and fundraising for a growing array of educational programs. Among these are the Bickel & Brewer Future Leaders Program, the Bickel & Brewer Latino Institute for Human Rights at New York University School of Law, and the Bickel & Brewer / NYU National Public Policy Forum.

 Under the direction of executive director Kit Sawers, the Foundation works in concert with the Bickel & Brewer Storefront in addition to providing annual support to more than 60 charities working in areas as diverse as medicine, the arts and human rights. During its history, the Foundation has contributed more than $18 million to the community.

Through the Bickel & Brewer Scholars Program, the Foundation continues to link students from economically disadvantaged areas of Dallas with top independent schools such as St. Mark's School of Texas and The Hockaday School. Through this initiative, the Foundation provides academic scholarships to Future Leaders Program students and other deserving young people in need.

The Bickel & Brewer Foundation is distinguished by its commitment to institutionalize the programs described throughout this report. The Bickel & Brewer Foundation looks forward to a future of increasing promise for people in need and their communities.

Bolstering existing community partnerships and fostering new ones, the Foundation recently commissioned the development of an animated computer program to enhance math and

07

David Welch (left), principal of the Billy Earl Dade Learning Center and community partner to the Bickel & Brewer Foundation, with Bill Brewer.

APP0043

BICKEL & BREWER FOUNDATION



science skills for teachers, students and the greater Dallas academic community. The new program, "Mathience," will bring 21st-century technology into urban classrooms, giving faculty members and young people the tools they need to succeed.

Critical to the Foundation's success have been its partnerships with distinguished community leaders. The Foundation collaborates with leaders in education, law, business and philanthropy to grow and support its mission.

The Foundation seeks input from its community network for assistance with the Foundation's charitable initiatives. This support – and the spirit of community partnership it fosters – enables the Foundation to bring benefits to the community while building programs that will generate long-term positive change.

Progressive and innovative, the Foundation continues to identify programmatic responses to areas of need in the community. The initiatives we offer have a direct impact on those they benefit, and an indirect but powerful impact on the communities they serve.



Solomon Warner talks about his future in the clearest of terms: "I want to be someone who makes a difference in the lives of those around me," says the 12-year-old standout student at O.W. Holmes Middle School in Dallas. That is in the future for Solomon and his fellow classmates through Bickel & Brewer Foundation initiatives, such as the Bickel & Brewer Future Leaders Program (FLP). Solomon is learning new computer skills, honing his study habits, and benefiting from an exciting array of cultural programs. He sees things differently than he used to.

"One of the things I like most about being involved in Foundation activities is doing new things," Solomon says. "We take field trips to places like museums and college universities, and that is new to me." These experiences have inspired Solomon, who plans to continue in the FLP for many years to come. "I'm going to keep attending classes and studying hard," he says. "I know you have to do that to be a lawyer, and that's what I see in my future."

## FUTURE LEADERS PROGRAM



Writing courses are an important component of the FLP to students Stephanie Parker (left) and Rocio Gutierrez.

The Bickel & Brewer Future Leaders Program (FLP) is unlike any other program taking place in public education today. It is a grassroots program which gives expression to the belief that every child in the community is a valuable resource – and that children from the most economically challenged parts of our communities will thrive if given the opportunity. The FLP provides intensive academic training, tutoring and mentoring for students in grades five through 12.

The Future Leaders Program relies on a unique partnership between the Dallas Independent School District (DISD) and a number of distinguished private educational institutions. The Future Leaders Program recently announced that Greenhill School and Episcopal School of Dallas have joined St. Mark's School of Texas and The Hockaday School as private school academic partners to this program.

During this past year, the Future Leaders Program expanded its reach to include more students in high school. A total of 150 students now participate in this unique program. The inaugural class will graduate in 2009, and by 2011 the FLP will include more than 240 young people.

Selected by the administrators at their schools of origin, the Future Leaders spend two afternoons each week in classrooms on the campuses of our private school partners, where they are tutored in subjects that complement their public school curriculums. The subjects include mathematics, language arts, technology and leadership.

The FLP will soon introduce a new curriculum, American Studies in Leadership. This customized curriculum will reinforce the elements of social responsibility, leadership and character, utilizing interdisciplinary and creative lesson plans.

Like all FLP classes, this curriculum will benefit from a 5:1 student-teacher ratio that assures each young person receives personal attention and guidance.

11

APP0045



Academic training in the FLP is combined with a mentoring and counseling program staffed by older high school students, who are chosen by host schools for their outstanding scholastic achievements and abilities. These student mentors attend all classroom sessions and provide an additional layer of academic and motivational support.

In addition to time spent in classrooms, Future Leaders are exposed to a rich and exciting array of activities away from school. FLP students also attend artistic performances, visit museums, and travel to faraway destinations to broaden their cultural perspective.

In previous years, Future Leaders have sojourned in places such as San Francisco and Yosemite Park. In 2006 and 2007, the Bickel & Brewer Foundation organized and funded trips to Boston and New York so that FLP students could tour some of the nation's finest universities and learn about the college experience.

These trips complement annual retreats for students entering high school. These special trips are designed to help ease the transition from junior high to high school, as students prepare for new challenges and opportunities relating to college preparedness. The students participate in leadership training, team-building exercises and courses on public speaking.

As the Future Leaders Program continues to grow, it will open worlds of possibility to these amazing young people – the leaders of tomorrow.



Through the "Leadership Lecture Series" the Future Leaders Program brings students face to face with key figures from the worlds of business, law, politics and public service. A recent event featured noted author and motivational speaker Nando Parrado.

Mr. Parrado survived a 1972 plane crash in the Andes Mountains and completed an 11-day trek that ended in a successful rescue mission. His story of survival was told in his 2006 book, "Miracle in the Andes." Before that, Mr. Parrado was portrayed by actor Ethan Hawke in the major motion picture "Alive," to which Mr. Parrado served as a technical adviser. Mr. Parrado now tours the world as a lecturer sharing his inspirational story.

"It is a great privilege for me to share my story with the amazing young people from the Future Leaders Program," Parrado says. "These students are overcoming great odds themselves, and following the vision they all have for personal greatness. They are an inspiration to me and countless others."



The Alexander W. Dreyfoos, Jr. School of the Arts debate team celebrates winning the Bickel & Brewer / NYU National Public Policy Forum with (from l-r) Bill Brewer, John Bickel, U.S. Senator Sheldon Whitehouse and NYU President John Sexton.

APP0047

NATIONAL PUBLIC POLICY FORUM



Alexander W. Dreyfoos, Jr. School of the Arts debater Zoe Friedland is among the
thousands of students who have participated in the NPPF.

Given the dynamic nature of today's political, social and economic environment, there is an
increasing need for vigorous debate, public discourse and critical communication. The Bickel
& Brewer / New York University National Public Policy Forum (NPPF) helps arm today's
young people with the skills needed to participate as leaders in tomorrow's world.

Gathering evidence. Developing cogent arguments. Expressing ideas clearly. Mastering these
fundamental skills is essential to gaining success in academics, business, law, public affairs
and more. The NPPF is designed to help students cultivate these important skills and test
their abilities in written and oral presentations.

Participation in the tournament is free and open to all schools, providing students and
schools with limited economic means the ability to take part in a national tournament.
Together with its administering partner New York University (NYU) and supporting
institutions (The University of Vermont, Emory University, the National
Forensic League and the National Association for Urban Debate Leagues),
the NPPF aims to bring new schools – public and private – into the
competition every year. Since its inception, the tournament has attracted more than 2,000
students from 35 states.

In the NPPF's initial phase, participating students compete in a series of written debates
conducted over the Internet during a six-month period from November through April. This
emphasis on written expression is a unique feature of the NPPF, with teams competing head
to head in single-elimination written debate contests.

Teams from four schools eventually qualify as semi-finalists, earning an all-expense-paid trip
to New York City where they take part in an oral competition held on the NYU campus.
Topics are drawn to reflect policy issues facing the United States and to draw upon the
National Forensic League's annual policy resolution.

17



The competition is intended to expand each competitor's prompt critical thinking. In 2007, participants debated the proposition that the U.S. federal government should limit its ability to detain individuals without charge. Students from the Alexander W. Dreyfoos, Jr. School of the Arts, from West Palm Beach, Fla., won top honors in both 2006 and 2007, earning $10,000 in cash awards and the Bickel & Brewer Cup.

In 2008, participants debated whether the United States federal government should substantially increase its AIDS/HIV public health assistance to Sub-Saharan Africa. Students from Bellaire High School, Bellaire, Texas, were the nation's best this year, winning a $10,000 cash award and the Bickel & Brewer Cup.

Last year, these students joined others around the country who qualified for special recognition from the National Forensic League. It was the first year that the organization awarded NPPF participants points that count toward admission into the NFL Nationals.

In an exciting new development, the NPPF Finals are now broadcast live via the Internet. The oral arguments can now be accessed by debaters across the world, sharing in real time a debate experience unlike any other. This interactive option works in combination with a broad mix of more traditional media.

The NPPF competition is routinely reported upon by leading newspapers, including *Rostrum* – the flagship publication of the National Forensic League. The exposure, student recognition and scholastic experience make the NPPF a uniquely creative academic opportunity.



There are many aspects of the Bickel & Brewer / NYU National Public Policy Forum that make it special, but none more so than the blue-ribbon panel of judges that evaluate and oversee the competition's final rounds. NPPF student finalists have to "make their case" before not only opposing debaters, but also some of the world's foremost experts in law, business, journalism and politics.

Along with NPPF founders, New York University President John Sexton (left) and Bill Brewer, judges for the recent finals competition included Scott Wunn, secretary, National Forensic League; Melissa Maxcy-Wade, director of forensics, Emory University; Lenny Gail, chairman, National Association for Urban Debate Leagues; Sheldon Prentice, senior vice president and general counsel, Merchants Bancshares, Inc.; and Larry Taub, *The New York Times*. Other recent NPPF judges have included Marshall J. Donat, associate general counsel, Starwood Hotels & Resorts, Inc.; Pam Spiliadis, executive director, Baltimore Urban Debate League; Alfred C. ("Tuna") Snider, director of forensics, The University of Vermont; and Will Baker, director of debate, New York University.

APP0049

# LATINO INSTITUTE FOR HUMAN RIGHTS

The growth of America's Latino community – in both numbers and influence – is a salient feature of our nation's increasingly diverse society. The Bickel & Brewer Latino Institute for Human Rights at New York University School of Law represents a unique response to this profound demographic shift by training attorneys who want to work to correct the failure of our institutions to work effectively for those in our nation's Latino communities.

To accomplish this important goal, the Latino Institute provides aspiring lawyers with full scholarships to NYU Law School. Latino Institute Fellows are a select group chosen on the basis of academic achievement and a history of community service. In return for their scholarships, recipients agree to work for two years after graduation in organizations that promote social justice or human rights in the Latino community. As part of its mission, the Latino Institute helps students identify organizations that meet the relevant criteria. The first Latino Institute Fellows began their legal studies in 2006.

The Latino Institute is among the first programs of its kind formed in the United States. It brings political, legal, and business leaders face to face with emerging scholars and lawyers committed to social and legal reform, and to promoting justice for the Latino community. The program emphasizes hands-on training in problem-solving strategies, including litigation, lobbying, education and outreach, community organization, and organizational and network management.

Through research and collaboration with community groups, the Latino Institute and the select lawyers it trains will work to improve the quality of life in Latino communities and ensure that our national goal of equal opportunity is truly available to our citizens of Latino heritage.

Current scholars of the Bickel & Brewer Latino Institute include (standing left to right) Andrea Nieves, Melissa Navarro, Thomas Fritzsche and (seated) Maribel Hernandez.

21

APP0050



The defining feature of the Latino Institute is its determination to turn each of its scholarship recipients into effective advocates. Drawing on the expertise of senior partners at Bickel & Brewer, the Institute's Human Rights Litigation Clinic will soon provide both theoretical and practical training, arming graduates with the skills necessary to advocate for social justice in the courtroom – and the community.

Through the Bickel & Brewer Storefront, Bickel & Brewer has an established history of conducting successful litigation on complex legal issues with broad community impact. The firm's partners are committed to sharing this expertise with students on an ongoing basis. Latino Institute founders provide monetary support as well as classroom training. As part of the program, students will also get invaluable practical experience as participants in ongoing human rights litigation.

Institute Fellows participate in a range of other programs designed to provide them with the perspective, knowledge and skills necessary to become community leaders. These include forums, workshops and conferences devoted to topics of interest and importance to the Latino community. The Latino Institute recently launched a lecture series that brings top names from the fields of law, politics and business to NYU. During their visits to campus, these leaders interact on a personal level with Institute Fellows, providing additional expertise and setting real-world examples for students to emulate.

The Latino Institute aims to provide top legal training to exceptional students committed to fighting for social justice – thereby improving the quality of life in America's Latino communities.



Melissa Navarro, a top graduate of the University of California at Los Angeles, could have won a scholarship at any law school in the country. She applied for only one – the Bickel & Brewer Latino Institute for Human Rights at NYU Law School. From the moment she read a description of the program she knew it was the perfect scholarship program for her. She had always imagined herself as a lawyer trained in community impact litigation, so she could use her bar card to effect positive change for others in the Latino community. Now she is an aspiring lawyer – and a trailblazer.

"There was no doubt in my mind that this Institute was the place for me," Melissa says. "It means a lot to be in the first class of Institute Fellows, helping to shape the course of my legal career and this groundbreaking program. I hope my career, like this program, helps advance equality and justice for communities of interest all over the world."

APP0051

BICKEL & BREWER STOREFRONT

Bickel & Brewer has long believed that in the hands of the right advocate, there is nothing more powerful than a bar card in effecting positive changes in our community.

Since 1995, the Bickel & Brewer Storefront has been using its brand of advocacy for those without the resources to afford effective representation. Bickel & Brewer attorneys have contributed more than 60,000 hours of time since the Storefront's inception to help clients who often had nowhere else to turn for legal help.

In 2006 and 2007, the Storefront's work contributed to the national debate regarding immigration reform. The Storefront took aim at controversial "immigration ordinances" being advanced at the local level. One such ordinance was adopted in the Dallas suburb of Farmers Branch, which required apartment residents and their families to provide proof of citizenship in order to rent apartments. The controversial ordinances came under fire, creating an environment that was discriminatory toward the Hispanic community.

In opposing the Farmers Branch measure, the Storefront filed a state court action alleging that the city violated the Texas Open Meetings Act and a federal court action alleging that the ordinance was unconstitutional. Working closely with key community stakeholders, the Storefront also began a grassroots coalition – Let the Voters Decide – that engineered a petition drive which was instrumental in forcing a public referendum on the ordinance. By any measure, the petition drive was among the most successful ever conducted in state history. News accounts of the campaign effort appeared in media outlets that included *The Dallas Morning News*, *The New York Times*, Associated Press, *The Washington Post* and National Public Radio, just to name a few. Although the cases are still pending, Farmers Branch has been permanently enjoined from enforcing the ordinances.

More recently, the Storefront sued the Dallas suburb of Irving over single-member districts. The suit calls for equal representation for the city's minority communities – giving a voice to minority residents who want to elect candidates to represent their interests.



Storefront client Guillermo Ramos (left) and Bill Brewer helped launch a legal and advocacy campaign against the illegal "immigration ordinances" proposed in the Dallas suburb of Farmers Branch.

25

BICKEL & BREWER STOREFRONT



In addition to leading the fight in high-profile, community impact cases, the Storefront also continues to work on a variety of other fronts.

These include representing clients from all walks of life who face a range of legal problems, and who are charged on an ability-to-pay basis only. An example of this legal commitment is the firm's representation of a Dallas Independent School District trustee.

The Storefront earned a trial verdict that successfully protected this trustee from facing an electoral challenge from a candidate who improperly declared his candidacy for a board seat despite living outside the required precinct boundary. This victory ensured that our client could continue serving the local school system – and working as an advocate for the young people in her community.

The Storefront seeks cases that impact the communities in which we live and work. Nowhere was this more evident than in the recent trial victory the Storefront earned for a victim of medical malpractice; the victory earned a $4 million jury award for the victim and his family and, importantly, has put a spotlight on how the 2003 amendments to the Texas Liability Act fail citizens of Texas who have just health care liability claims.

By working closely with the community, the Storefront enables Bickel & Brewer attorneys and professionals to develop a greater sense of how the law can effectively serve all members of the community when those members are provided access to effective legal representation.

As a resource providing aid and advocacy, the Bickel & Brewer Storefront looks forward to continuing its work on behalf of the community.



Guillermo Ramos never viewed himself as an activist, but working with the Bickel & Brewer Storefront has given him the opportunity to represent his community in ways he once only dreamed about. "I filed a lawsuit against the city of Farmers Branch because I knew the city was violating the Texas Open Meetings Act – and failing its people," he says. "The Storefront took my case pro bono and gave me the opportunity to help right a wrong."

Ramos now helps lead a community coalition opposed to the Farmers Branch City Council's proposed "immigration ordinance." Ramos says after working on this issue, he became so inspired he has decided to attend law school. "I've realized that becoming a lawyer is a great way to make positive things happen," Guillermo says. "I hope I can return to this community and use my law degree to make it a better place."

RECOGNITION IN THE COMMUNITY

Bickel & Brewer's charitable activities have received widespread recognition.

2007  William A. Brewer III Named Inaugural Board Member of National Association for Urban
       Debate Leagues' Dallas Chapter

2007  William A. Brewer III Named "Communicator of the Year" by the National Forensic League

2007  Bickel & Brewer Recognized in the *Dallas Business Journal* as Leading Philanthropist among
       Dallas-area law firms

2006  William A. Brewer III and Future Leaders Program Receive "Governor's Volunteerism Award"

2005  William A. Brewer III and Future Leaders Program Named a "Hero for Children" by
       Texas State Board of Education

2004  Named "Corporation of the Year" by Creative Visions Social Services

2004  Named one of the "Top 10 Corporate Philanthropists" by the *Dallas Business Journal*

2004  Featured in *Small Firm Business*, a national publication of American Lawyer Media, Inc.

2003  Featured in *What's New in Law Firm Pro Bono*, the national publication of the Pro
       Bono Institute, Washington, DC

2002  President's Award from the Dallas Hispanic Bar Association

2002  Special Recognition from the Dallas Bar Association and Dallas Volunteer Attorney
       Program at the 20th Annual Pro Bono Awards Ceremony

2001  Special Recognition from the Dallas Bar Association and Dallas Volunteer Attorney
       Program at the 19th Annual Pro Bono Awards Ceremony

2000  Self-sustaining Community Award from the Dallas Community Leadership Luncheon
       and Dallas County Commissioner John Wiley Price

2000  Pro Bono Gold Award presented by the Dallas Volunteer Attorney Program

1999  Exemplary Service Award from the Dallas Bar Association

1999  Corporate Sponsor Award from the Juvenile Diabetes Research Foundation

1999  Silver Service Award from Legal Services of North Texas

1999  Silver Award for Superior Pro Bono Service, presented at the 17th Annual Pro Bono
       Awards Ceremony by the Dallas Volunteer Attorney Program

1997  "Bridging the Gap" award presented by Jidera Communications to William A. Brewer III

1996  Best Foot Forward Award from Dallas City Lights – Walk a Mile in My
       Shoes organization

1996  Step Ahead Award from Dallas City Lights – Walk a Mile in My Shoes organization

1995  Special Recognition from Dallas Mayor Ron Kirk on behalf of the City of Dallas

. . . . . .

28

**BICKEL & BREWER**
**FOUNDATION**

Dallas · New York

www.bickelbrewer.com

For more information, contact Foundation Executive Director Kit Sawers
214.653.4898 or krs@bickelbrewer.com

# EXHIBIT
# D

APP0056

PRE-FINAL BILL

Mary Miller Smith
STOREFRONT (MLK)
1717 Main Street
Dallas, TX 75201

March 30, 2010
Invoice No. 42977
8001/152

FOR PROFESSIONAL SERVICES RENDERED:
8001/152
STOREFRONT (MLK)/Villas at Parkside, et. al. v. The City of Farmers
Branch

| | | | Hours | Amount |
|---|---|---|---|---|
| 01/18/08 | CDB | Pursue strategy re proposed ordinance. | 1.00 | 550.00 |
| 01/18/08 | MLS | Review and analyze new ordinance; pursue strategy re same. | .70 | 472.50 |
| 01/22/08 | CDB | Pursue strategy re proposed ordinance; review and analyze same; review and analyze law re claims. | 2.80 | 1,540.00 |
| 01/23/08 | CDB | Pursue strategy; review and analyze law re potential claims and present claims. | 3.70 | 2,035.00 |
| 01/23/08 | MLS | Pursue various matters re new city ordinance. | 1.00 | 675.00 |
| 01/24/08 | CDB | Research, review, and analyze law re new ordinance; pursue strategy re same. | 4.90 | 2,695.00 |
| 01/24/08 | JGT | Confer re problems with the new ordinance. | .60 | 165.00 |

```
                        March 30, 2010          Page    2
                        8001/152


01/25/08   JJB    Review documents re          4.00     1,000.00
                  conduct research re
                  prepare report re

01/31/08   GAT    Conduct research re in order to   5.50    2,750.00
                  pursue complaint against Ordinance
                  2952.


02/02/08   CDB    Research and analyze factual and   1.00    550.00
                  legal issues re ordinance 2952.

02/04/08   CDB    Pursue potential claims re     1.20      660.00
                  ordinance 2952.

02/05/08   GAT    Conduct research re Farmers     2.90    1,450.00
                  Branch's equal protection
                  violations.

02/06/08   CDB    Pursue issues re ordinance 2952;   2.40   1,320.00
                  review media re same; research,
                  review and analyze law re same.

02/08/08   CDB    Pursue ordinance 2952.          .40      220.00

02/12/08   GAT    Conduct research re local      2.00    1,000.00
                  regulation restricting employers
                  from hiring aliens.

02/13/08   CDB    Pursue issues re ordinance 2952.   .30    165.00

02/13/08   GAT    Conduct research re violations of   2.70   1,350.00
                  equal protection clause and due
                  process clause by new licensing
                  ordinance.

02/18/08   GAT    Conduct research re equal       3.00    1,500.00
                  protection violation issues raised
                  by Ordinance 2952; conduct
                  research on dormant commerce
                  clause issues.

02/19/08   GAT    Conduct research re            1.50      750.00
                  constitutionality of Ordinance
                  2952.
```

APP0058

March 30, 2010          Page    3
8001/152

| | | | | |
|---|---|---|---|---|
| 02/20/08 | GAT | Conduct research re Ordinance 2952 and how it violates fundamental rights. | 2.00 | 1,000.00 |
| 03/09/08 | CDB | Review and analyze law re potential claims. | .50 | 275.00 |
| 03/14/08 | CDB | Pursue strategy re Ordinance 2952. | 1.30 | 715.00 |
| 03/14/08 | GAT | Conduct research re constitutional defects of ordinance 2952. | 1.00 | 500.00 |
| 03/16/08 | GAT | Conduct research re constitutional defects of ordinance 2952. | 4.20 | 2,100.00 |
| 03/17/08 | GAT | Conduct research re violations of equal protection clause in enforcement of ordinance 2952. | 3.00 | 1,500.00 |
| 03/21/08 | GAT | Conduct research re constitutional conditions. | 1.50 | 750.00 |
| 03/22/08 | GAT | Conduct research re | 2.80 | 1,400.00 |
| 03/24/08 | CDB | Pursue strategy re Ordinance 2952. | .40 | 220.00 |
| 04/02/08 | GAT | Conduct research re preemption concerns with city residential licensing ordinance. | .80 | 400.00 |
| 04/04/08 | GAT | Conduct research re preemption issues with city's residential licensing ordinance. | 3.00 | 1,500.00 |
| 04/07/08 | GAT | Conduct research on | 3.30 | 1,650.00 |
| 04/08/08 | CDB | Pursue strategy re Ordinance 2952. | .30 | 165.00 |
| 04/08/08 | GAT | Conduct research re | 1.20 | 600.00 |

APP0059

```
                          March 30, 2010          Page    4
                          8001/152
```

| | | | | |
|---|---|---|---|---|
| 04/09/08 | GAT | Conduct research re dormant commerce clause challenges to city's licensing ordinance. | 1.00 | 500.00 |
| 04/11/08 | GAT | Conduct research re due process issues with Ordinance 2952. | 1.50 | 750.00 |
| 04/13/08 | GAT | Conduct research re preemption challenges to Ordinance 2952; conduct research re equal protection challenges to Ordinance 2952; prepare memoranda re the same. | 1.00 | 500.00 |
| 04/13/08 | GAT | Conduct research on procedural due process concerns with Ordinance 2952; prepare memorandum re the same; pursue strategy. | 5.50 | 2,750.00 |
| 04/14/08 | CDB | Pursue strategy re 2952. | .70 | 385.00 |
| 04/14/08 | GAT | Conduct research re preemption challenges to Ordinance 2952; conduct research re equal protection challenges to Ordinance 2952; prepare memoranda re same. | 3.40 | 1,700.00 |
| 04/14/08 | GAT | Conduct research re preemption challenges to Ordinance 2952; conduct research re equal protection challenges to Ordinance 2952; prepare memoranda re the same. | 9.60 | 4,800.00 |
| 04/15/08 | GAT | Conduct research re state preemption challenges to Ordinance 2952; confer re strategy; prepare memorandum on constitutionality of Ordinance 2952. | 7.20 | 3,600.00 |
| 04/16/08 | CDB | Pursue strategy re 2952. | .80 | 440.00 |
| 04/16/08 | GAT | Review and revise memorandum re constitutionality of Ordinance 2952. | 2.50 | 1,250.00 |

APP0060

March 30, 2010          Page   5
8001/152

| | | | | |
|---|---|---|---|---|
| 04/25/08 | CDB | Pursue strategy re 2952. | .70 | 385.00 |
| 05/14/08 | GAT | Prepare original complaint and motion for injunctive relief. | .80 | 400.00 |
| 05/15/08 | GAT | Conduct research re constitutionality of new ordinance; review documents provided by Farmers Branch re motivation for passage of Ordinance; review and revise complaint and motion for injunctive relief. | 4.70 | 2,350.00 |
| 05/16/08 | GAT | Conduct research re constitutionality of latest ordinance; review documents provided by defendants. | 3.50 | 1,750.00 |
| 05/19/08 | CDB | Pursue strategy re 2952. | .30 | 165.00 |
| 05/19/08 | GAT | Prepare complaint and request for preliminary injunctive relief. | 5.00 | 2,500.00 |
| 05/19/08 | JHT | Review invoices, news articles and documents to formulate timeline of events. | 1.20 | 480.00 |
| 05/21/08 | CDB | Pursue strategy re press and 2952. | .80 | 440.00 |
| 05/21/08 | GAT | Prepare complaint and request for temporary injunction re ordinance 2952; conduct research re preemption issues raised by new ordinance. | 4.50 | 2,250.00 |
| 05/22/08 | GAT | Prepare complaint and request for injunctive relief against ordinance 2952; conduct research re preemption issues with ordinance 2952; conduct research re ordinance's violation of HUD section 8 housing rules; confer re strategy; pursue strategy; conduct research re ordinance's violations of the Texas Constitution. | 7.50 | 3,750.00 |

APP0061

```
                        March 30, 2010            Page    6
                        8001/152
```

| | | | | |
|---|---|---|---|---|
| 05/23/08 | GAT | Conduct research re federal validation program for benefits' eligibility; review prior civil rights litigation against Farmers Branch. | 5.50 | 2,750.00 |
| 05/27/08 | CDB | Pursue strategy re complaint. | .80 | 440.00 |
| 05/27/08 | GAT | Prepare complaint re constitutionality of Ordinance 2952; pursue strategy. | 8.50 | 4,250.00 |
| 05/28/08 | CDB | Review and revise complaint. | 4.60 | 2,530.00 |
| 05/28/08 | GAT | Prepare complaint re constitutionality of Ordinance 2952. | 7.30 | 3,650.00 |
| 05/29/08 | CDB | Pursue strategy re 2952. | 1.40 | 770.00 |
| 05/29/08 | GAT | Prepare motion for a temporary restraining order; review court's order re prior ordinance; confer re strategy; conduct research re classes under equal protection analysis; conduct review re discovery related issues in the pending lawsuit. | 6.40 | 3,200.00 |
| 06/01/08 | JGT | Draft memorandum re strategy and ordinance 2952. | 2.90 | 797.50 |
| 06/02/08 | CDB | Draft and revise complaint. | 1.30 | 715.00 |
| 06/02/08 | GAT | Prepare complaint and request for injunctive relief challenging Ordinance 2952; pursue strategy. | 5.00 | 2,500.00 |
| 06/03/08 | CDB | Review and revise complaint. | 6.70 | 3,685.00 |
| 06/03/08 | GAT | Review and revise complaint; confer re strategy; pursue strategy; review investigative reports re ; conduct research re violation of Texas Constitution. | 6.00 | 3,000.00 |

March 30, 2010          Page    7
8001/152

| | | | | |
|---|---|---|---|---|
| 06/04/08 | GAT | Conduct research re equal protection and preemptive injunctive relief; conduct research re impermissible burdens on citizens; review and revise complaint and request for injunctive relief; review and revise complaint; confer re strategy; | 6.20 | 3,100.00 |
| 06/05/08 | GAT | Conduct research on SAVE Program; review and revise complaint and request for injunctive relief; confer re strategy; pursue strategy re complaint; conduct research on violations of Texas law. | 7.80 | 3,900.00 |
| 06/06/08 | GAT | Conduct research re equal protection clause and                        ; review and revise petition and request for injunctive relief for ordinance 2952. | 6.00 | 3,000.00 |
| 06/07/08 | CDB | Draft and revise complaint; research and analyze law re same. | 2.50 | 1,375.00 |
| 06/07/08 | GAT | Pursue strategy re complaint. | 4.00 | 2,000.00 |
| 06/08/08 | CDB | Draft and revise complaint; research and analyze law re same. | 7.00 | 3,850.00 |
| 06/08/08 | GAT | Pursue complaint and injunctive relief against ordinance 2952; confer re strategy re equal protection claims. | 6.70 | 3,350.00 |
| 06/08/08 | JGT | Conduct research for and revise original complaint. | 3.70 | 1,017.50 |
| 06/09/08 | CDB | Review and revise complaint; analyze law re same. | 7.40 | 4,070.00 |

```
                        March 30, 2010           Page    8
                        8001/152
```

| 06/09/08 | GAT | Prepare complaint and request for injunctive against ordinance 2952; confer re strategy on due process claim and preemption arguments. | 5.50 | 2,750.00 |
|---|---|---|---|---|
| 06/09/08 | JGT | Confer re complaint. | .50 | 137.50 |
| 06/10/08 | CDB | Review and revise complaint; research, review, and analyze law re same. | 3.00 | 1,650.00 |
| 06/10/08 | GAT | Conduct research on causes of action against ordinance 2952; review and revise complaint on causes of action. | 3.00 | 1,500.00 |
| 06/11/08 | GAT | Review and revise complaint; pursue strategy re causes of action to assert for City's violation of constitution. | 4.30 | 2,150.00 |
| 06/12/08 | JGT | Revise complaint. | 4.60 | 1,265.00 |
| 06/13/08 | CDB | Pursue strategy. | .20 | 110.00 |
| 06/13/08 | JGT | Conduct research for and revise complaint. | 3.30 | 907.50 |
| 06/14/08 | CDB | Review and revise complaint; review and analyze law re same. | 10.00 | 5,500.00 |
| 06/14/08 | GAT | Review and revise complaint; conduct research on privileges and immunities clause and right to travel; pursue strategy re causes of action to assert for City's violation of constitution. | 3.00 | 1,500.00 |
| 06/14/08 | JGT | Conduct research and revise complaint. | 9.90 | 2,722.50 |
| 06/15/08 | CDB | Revise complaint. | 2.50 | 1,375.00 |

APP0064

March 30, 2010          Page    9
8001/152

| | | | | |
|---|---|---|---|---|
| 06/15/08 | GAT | Conduct research on privileges and immunities violations and right to travel restrictions imposed by Ordinance 2952. | 1.00 | 500.00 |
| 06/16/08 | CDB | Review and revise complaint. | 1.80 | 990.00 |
| 06/16/08 | GAT | Conduct research re new ordinance's violations of right to travel and commerce clause. | 1.00 | 500.00 |
| 06/16/08 | JGT | Conduct research re complaint; revise same. | 3.20 | 880.00 |
| 06/17/08 | CDB | Revise complaint. | 3.00 | 1,650.00 |
| 06/18/08 | CDB | Revise complaint. | 8.40 | 4,620.00 |
| 06/18/08 | GAT | Conduct research re new ordinances violations of privileges and immunities; confer re strategy of commerce clause challenges; conduct research re violations of the commerce clause; confer re due process concerns; pursue strategy re void for vagueness provision of the new ordinance. | 2.70 | 1,350.00 |
| 06/18/08 | JGT | Conduct research for and revise complaint. | 7.20 | 1,980.00 |
| 06/19/08 | CDB | Research and analyze law re claims; review and revise complaint. | 9.70 | 5,335.00 |
| 06/19/08 | GAT | Conduct research re impermissible shifting of burden when denying fundamental rights to travel; conduct research re unavoidable violations of criminal statute; confer re strategy on pleading the same; prepare memorandum response re new ordinance's impermissible shifting of burden to landlords and occupants to prove innocence. | 2.00 | 1,000.00 |

APP0065

March 30, 2010          Page  10
8001/152

| | | | | |
|---|---|---|---|---|
| 06/19/08 | JGT | Conduct research for and revise complaint. | 5.40 | 1,485.00 |
| 06/20/08 | JGT | Revise complaint. | 1.50 | 412.50 |
| 06/23/08 | JGT | Conduct research for and draft response to motion for entry of judgment. | 1.50 | 412.50 |
| 07/29/08 | CDB | Pursue claims re Ordinance 2952; research and analyze law re same. | 1.20 | 660.00 |
| 07/29/08 | JGT | Conduct research regarding hearings and due process. | .30 | 82.50 |
| 07/29/08 | JSR | Review Ordinance 2952; review constitutional law research; review draft amended complaint; confer re same; draft preliminary statement. | 4.80 | 3,840.00 |
| 07/30/08 | GAT | Conduct research re commerce clause violations. | 1.70 | 850.00 |
| 07/30/08 | JSR | Pursue amended complaint. | .30 | 240.00 |
| 07/31/08 | CDB | Review and analyze article. | .20 | 110.00 |
| 08/01/08 | CDB | Pursue strategy re 2952 complaint. | .40 | 220.00 |
| 08/02/08 | JSR | Conduct research re relevant provisions of immigration law; analyze Ordinance 2952; review briefing and orders from other cases. | 4.50 | 3,600.00 |
| 08/03/08 | JSR | Review research re federal program for determining immigration status and municipality participation in that program; review various briefs, orders, statutes, and regulations re immigration issues; confer re same. | 2.70 | 2,160.00 |
| 08/04/08 | CDB | Review and analyze facts and law re 2952 complaint. | 1.20 | 660.00 |

APP0066

March 30, 2010          Page   11
8001/152

| | | | | |
|---|---|---|---|---|
| 08/04/08 | JGT | Conduct research for and revise complaint. | 1.40 | 385.00 |
| 08/04/08 | JSR | Review and revise draft complaint; confer re same. | 3.70 | 2,960.00 |
| 08/11/08 | CDB | Review and analyze law re complaint; pursue strategy re same. | .80 | 440.00 |
| 08/12/08 | JGT | Conduct research re due process. | 1.30 | 357.50 |
| 08/29/08 | JSR | Pursue complaint in new action; review background materials re same. | 3.00 | 2,400.00 |
| 08/30/08 | CDB | Pursue strategy in 2952; draft application for temporary restraining order. | 3.80 | 2,090.00 |
| 08/31/08 | GAT | Conduct research re due process challenge to Ordinance 2952. | 3.50 | 1,750.00 |
| 09/01/08 | JSR | Confer re preparation of complaint; begin revisions to same; confer re preparation of injunction papers. | 6.50 | 5,200.00 |
| 09/02/08 | CDB | Draft and revise complaint; draft and revise application for temporary restraining order; research and analyze facts and law re same. | 17.30 | 9,947.50 |
| 09/02/08 | JGT | Conduct research for and revise complaint and application for temporary restraining order. | 12.00 | 4,500.00 |
| 09/02/08 | JSR | Revise and finalize complaint for filing; confer re preparation of injunction papers and logistics for obtaining declarations in support of motion; confer re legal arguments for inclusion in brief. | 10.00 | 8,000.00 |

APP0067

```
                              March 30, 2010          Page   12
                              8001/152
```

| | | | | |
|---|---|---|---|---|
| 09/02/08 | MDH | | .70 | 245.00 |
| 09/03/08 | BXR | Conduct research re due process. | 9.20 | 2,208.00 |
| 09/03/08 | CDB | Pursue strategy re fee application. | .50 | 287.50 |
| 09/03/08 | CDB | Finalize complaint; draft and revise application for temporary restraining order; research and analyze law and facts re same. | 10.70 | 6,152.50 |
| 09/03/08 | JGT | Conduct research for and revise application for temporary restraining order. | 12.00 | 4,500.00 |
| 09/04/08 | CDB | Draft and revise application for temporary restraining order; research and analyze law re same; research and analyze facts. | 11.90 | 6,842.50 |
| 09/04/08 | JGT | Revise declaration; revise application for temporary restraining order. | 12.00 | 4,500.00 |
| 09/04/08 | JSR | Prepare declaration of M. Smith; revise declaration of M. Diamond; confer with client re declaration; prepare communications re same; confer re brief; draft sections for inclusion in brief. | 9.20 | 7,360.00 |
| 09/04/08 | MEL | Pursue challenge to ordinance; conduct legal research re immigration law definitions; organize documents re same. | 2.30 | 862.50 |
| 09/05/08 | CDB | Draft and revise temporary restraining order application; research and analyze law re same. | 11.20 | 6,440.00 |

APP0068

March 30, 2010          Page   13
8001/152

| | | | | |
|---|---|---|---|---|
| 09/05/08 | JGT | Revise application for temporary restraining order; draft motion and order to extend page limit; revise supporting declarations. | 7.20 | 2,700.00 |
| 09/05/08 | JSR | Pursue preparation of injunction papers; confer re same. | 7.70 | 6,160.00 |
| 09/06/08 | CDB | Review and revise brief in support of application for TRO; review and revise motion to transfer. | 5.80 | 3,335.00 |
| 09/06/08 | JGT | Draft motion to transfer. | 2.40 | 900.00 |
| 09/06/08 | JSR | Pursue matters re injunction papers. | 1.00 | 800.00 |
| 09/07/08 | CDB | Draft and revise motion to transfer; revise brief in support of application for TRO. | 4.60 | 2,645.00 |
| 09/07/08 | JGT | Revise motion to transfer. | 1.40 | 525.00 |
| 09/07/08 | JSR | Confer re finalizing and filing injunction papers. | .50 | 400.00 |
| 09/08/08 | CDB | Review, revise, and finalize filings re temporary restraining order; pursue strategy re same; review and analyze facts and law re same. | 8.80 | 5,060.00 |
| 09/08/08 | JGT | Revise application for a temporary restraining order and preliminary injunction; revise motion to extend pages; revise motion to transfer. | 1.90 | 712.50 |
| 09/08/08 | JJB | Confer with research analyst and conduct inquiries re                 ; prepare report re same. | 1.50 | 450.00 |
| 09/08/08 | JSR | Pursue matters re request for temporary restraining order. | 1.00 | 800.00 |

APP0069

March 30, 2010          Page   14
8001/152

| 09/09/08 | CDB | Research, review, and analyze facts and law re hearing on temporary restraining order; prepare for same. | 2.60 | 1,495.00 |
| 09/09/08 | GAT | Pursue research re constitutional violations of new ordinance. | 1.00 | 500.00 |
| 09/09/08 | JGT | Conduct research for and prepare for hearing on request for temporary restraining order; draft powerpoint slides. | 3.80 | 1,425.00 |
| 09/09/08 | JJB | Conduct inquiries re ; prepare report and submit re same. | 2.30 | 690.00 |
| 09/09/08 | JSR | Revise and finalize letter to court; confer re preparation for hearing. | 8.30 | 6,640.00 |
| 09/10/08 | CDB | Review and analyze facts and law in preparation for hearing. | .80 | 460.00 |
| 09/10/08 | JGT | Conduct research for and prepare for hearing on temporary restraining order; draft memorandum on lawful presence. | 8.30 | 3,112.50 |
| 09/10/08 | JJB | Confer with investigator re case; review documents re conduct further inquiries re same. | 1.60 | 480.00 |
| 09/10/08 | JSR | Pursue matters in preparation for hearing on temporary restraining order; review research; confer re hearing. | 10.00 | 8,000.00 |
| 09/10/08 | MEL | Pursue research re meaning of "federal government." | .20 | 75.00 |
| 09/11/08 | CDB | Prepare for hearing; review and analyze Defendant's response; research and analyze law re same. | 4.80 | 2,760.00 |

APP0070

March 30, 2010                  Page   15
8001/152

| 09/11/08 | GAT | Pursue research re constitutional violations of new ordinance; pursue strategy; confer re the same. | 4.30 | 2,150.00 |
|---|---|---|---|---|
| 09/11/08 | JGT | Conduct research for and prepare for hearing on temporary restraining order. | 5.50 | 2,062.50 |
| 09/11/08 | JSR | Review brief in opposition to motion for injunctive relief; confer re same; review additional research and factual support; confer re preparation of additional declaration; review opposition to motion to transfer; prepare reply. | 7.30 | 5,840.00 |
| 09/12/08 | CDB | Prepare for hearing re temporary restraining order; participate in hearing; pursue strategy re preliminary injunction. | 7.50 | 4,312.50 |
| 09/12/08 | JGT | Conduct research and prepare for hearing, attend hearing. | 8.00 | 3,000.00 |
| 09/12/08 | JJB | Confer with research analyst and attorney re SAVE program; conduct inquiries re same with resources and brief analyst and attorney on results. | 2.90 | 870.00 |
| 09/12/08 | JSR | Prepare for hearing re motion for temporary restraining order; attend hearing; confer re same. | 10.00 | 8,000.00 |
| 09/15/08 | CDB | Review and analyze facts and law re preliminary injunction hearing, pursue fact witnesses; prepare for preliminary injunction hearing. | 3.60 | 2,070.00 |
| 09/15/08 | JGT | Conduct research for preliminary injunction hearing. | 1.20 | 450.00 |

APP0071

March 30, 2010          Page   16
8001/152

| | | | | |
|---|---|---|---|---|
| 09/15/08 | JJB | Confer with investigator re additional inquiries; conduct inquiries regarding Farmers Branch Revitalization Committee and Code of Ethics etc. | 2.20 | 660.00 |
| 09/15/08 | JSR | Confer re preparation for preliminary injunction hearing; pursue same. | 1.80 | 1,440.00 |
| 09/16/08 | CDB | Research and analyze law re preliminary injunction, pursue strategy re wearing. | 4.20 | 2,415.00 |
| 09/16/08 | JGT | Conduct research for hearing; revise powerpoint presentation. | 2.90 | 1,087.50 |
| 09/16/08 | JJB | Prepare memorandum re SAVE inquiry and results therefrom; conduct inquiries regarding Farmers Branch Revitalization Committee and Code of Ethics etc. | 6.50 | 1,950.00 |
| 09/16/08 | JSR | Pursue preparation for preliminary injunction hearing; review various statutes and regulations; confer re additional affidavits and research. | 8.20 | 6,560.00 |
| 09/16/08 | NLT | Research evidence required for preliminary injunction hearing. | .50 | 120.00 |
| 09/17/08 | CDB | Prepare for preliminary injunction hearing; draft and revise affidavits. | 7.30 | 4,197.50 |
| 09/17/08 | JGT | Revise declarations. | 1.00 | 375.00 |
| 09/17/08 | JSR | Review case law in preparation for preliminary injunction; confer re potential agreement to same. | 4.50 | 3,600.00 |
| 09/17/08 | MCV | Conduct research re preemption by federal law, facial challenge to ordinance. | 4.90 | 2,327.50 |

March 30, 2010          Page   17
8001/152

| | | | | |
|---|---|---|---|---|
| 09/18/08 | CDB | Prepare for preliminary injunction hearing; draft and revise affidavits; pursue strategy re scheduling. | 7.80 | 4,485.00 |
| 09/18/08 | JGT | Confer re preliminary injunction and discovery. | .40 | 150.00 |
| 09/18/08 | JJB | Conduct inquiries regarding Farmers Branch Revitalization Committee and Code of Ethics etc.; confer and send FOIA request to Farmers Branch. | .80 | 240.00 |
| 09/18/08 | MCV | Conduct research re Federal preparation and facial challenges. | 2.50 | 1,187.50 |
| 09/19/08 | CDB | Pursue agreed scheduling order and preliminary injunction; prepare for hearing; draft and revise affidavits in support of preliminary injunction. | 7.20 | 4,140.00 |
| 09/19/08 | JGT | Conduct research in preparation for hearing; draft documents relating to agreed preliminary injunction. | 4.70 | 1,762.50 |
| 09/19/08 | JJB | Conduct inquiries re ; prepare information for investigator. | 2.90 | 870.00 |
| 09/19/08 | JSR | Negotiate agreed pretrial schedule with opposing counsel; confer with counsel for Reyes plaintiffs; prepare letter re agreed schedule; prepare joint letter to court re same. | 7.80 | 6,240.00 |
| 09/19/08 | MCV | Conduct research re preemption and factual challenges. | .90 | 427.50 |

APP0073

```
                          March 30, 2010          Page   18
                          8001/152
```

| | | | | |
|---|---|---|---|---|
| 09/19/08 | MDH | Conduct background check re ; review county records re same; draft correspondence re same. | .70 | 245.00 |
| 09/20/08 | CDB | Pursue discovery. | .30 | 172.50 |
| 09/20/08 | JSR | Review filing by Reyes plaintiffs; pursue preparation for hearing. | .30 | 240.00 |
| 09/20/08 | MCV | Conduct research re preemption and factual challenges. | 1.40 | 665.00 |
| 09/22/08 | CDB | Prepare for and attend hearing; pursue strategy re discovery and motion for summary judgment; review and analyze objections to evidence; pursue agreed preliminary injunction and scheduling order. | 5.20 | 2,990.00 |
| 09/22/08 | GAT | Pursue research re demonstrating intent or effect. | 2.00 | 1,000.00 |
| 09/22/08 | JGT | Draft documents relating to preliminary injunction; confer re discovery. | 1.00 | 375.00 |
| 09/22/08 | JSR | Prepare for hearing before Judge Boyle; appear in court and negotiate agreed preliminary injunction; revise preliminary injunction and pretrial scheduling order. | 5.00 | 4,000.00 |
| 09/23/08 | CDB | Pursue discovery; draft requests for production; review and analyze answer. | 2.60 | 1,495.00 |
| 09/23/08 | JGT | Revise discovery. | .50 | 187.50 |
| 09/23/08 | JSR | Pursue matters re request for attorneys' fees; review research re same. | 2.00 | 1,600.00 |

March 30, 2010                Page   19
8001/152

| | | | | |
|---|---|---|---|---|
| 09/23/08 | MGH | Review and analyze Farmers Branch ordinances. | 3.00 | 1,425.00 |
| 09/24/08 | ARS | Review news articles re T. O'Hare quotes; draft request for admissions. | 10.20 | 2,448.00 |
| 09/24/08 | CDB | Review and revise discovery; pursue strategy re same. | 1.20 | 690.00 |
| 09/24/08 | GAT | Pursue research re scope of qualified immunity in equal protection claims. | 2.40 | 1,200.00 |
| 09/24/08 | JGT | Revise discovery. | .90 | 337.50 |
| 09/24/08 | MGH | Review and analyze original complaint and ordinance 2952; review research memorandum re elements of proof; prepare draft set of interrogatories. | 6.00 | 2,850.00 |
| 09/25/08 | ARS | Review news articles re T. O'Hare quotes; draft request for admissions; confer with counsels re same. | 10.00 | 2,400.00 |
| 09/25/08 | CDB | Pursue strategy re discovery; review and revise same. | 1.80 | 1,035.00 |
| 09/25/08 | MGH | Review research memoranda re Constitutional and Fair Housing Act issues; prepare additional interrogatories. | 5.50 | 2,612.50 |
| 09/26/08 | ARS | Draft request for admissions; confer with counsel re same. | 5.00 | 1,200.00 |
| 09/26/08 | CDB | Draft, review, and revise discovery. | 1.30 | 747.50 |
| 09/26/08 | GAT | Pursue discovery re equal protection claims; confer with partner re discovery in equal protection claims. | 1.50 | 750.00 |

March 30, 2010          Page   20
8001/152

| | | | | |
|---|---|---|---|---|
| 09/26/08 | JGT | Revise discovery requests. | 1.50 | 562.50 |
| 09/26/08 | MGH | Review and analyze complaint and ordinance 2952; prepare and revise additional interrogatories. | 4.00 | 1,900.00 |
| 09/27/08 | CDB | Review and revise discovery; pursue strategy re same. | 2.40 | 1,380.00 |
| 09/27/08 | GAT | Pursue discovery on equal protection claims related to city's intent to discriminate. | 2.30 | 1,150.00 |
| 09/28/08 | CDB | Draft, review, and revise discovery; pursue strategy re same. | 9.00 | 5,175.00 |
| 09/28/08 | GAT | Conduct research re limited immunity afforded city council members. | 1.30 | 650.00 |
| 09/28/08 | JGT | Revise discovery requests. | 4.10 | 1,537.50 |
| 09/28/08 | JSR | Draft interrogatories and requests for admission; review discovery requests and confer re same. | 4.90 | 3,920.00 |
| 09/29/08 | ARS | Review request for admissions; research article re corresponding quote; review articles. | 5.50 | 1,320.00 |
| 09/29/08 | CDB | Review and revise discovery; pursue strategy re same. | 3.00 | 1,725.00 |
| 09/29/08 | JGT | Revise discovery requests. | 6.40 | 2,400.00 |
| 09/29/08 | JSR | Prepare document requests, interrogatories and requests for admission; revise and finalize nine sets of discovery; prepare Rule 30(b)(6) topics and memorandum re depositions. | 9.50 | 7,600.00 |
| 09/30/08 | CDB | Pursue responding to the City's discovery, pursue experts. | 6.80 | 3,910.00 |

APP0076

March 30, 2010      Page  21
8001/152

| 09/30/08 | JGT | Review discovery requests; confer with counsel for Reyes plaintiffs; pursue strategy. | 1.70 | 637.50 |
|---|---|---|---|---|
| 09/30/08 | JSR | Confer with N. Perales re ; prepare memorandum re same; review memorandum re proposed deponents; confer re investigation of facts. | 4.20 | 3,360.00 |
| 10/01/08 | CDB | Research potential expert witnesses; interview same; pursue discovery; pursue fact witnesses; research and analyze law re equal protection and commerce clause claims. | 9.40 | 5,405.00 |
| 10/01/08 | GAT | Pursue research re establishing disparate impact or discriminatory effect in Farmers Branch. | 2.80 | 1,400.00 |
| 10/01/08 | JGT | Review discovery requests; pursue strategy re experts. | .40 | 150.00 |
| 10/01/08 | JJB | Conduct inquiries re FOIA request to Farmers Branch re Revitalization Task Force. | .90 | 270.00 |
| 10/01/08 | JJB | Confer with attorney re case; conduct inquiries re identifying potential experts from former I&NS; conduct inquiries and research re ; conduct inquiries and research re ; prepare initial reports re same. | 5.30 | 1,590.00 |
| 10/01/08 | JSR | Confer re expert witnesses and fact witnesses; review materials re same and local immigration ordinances. | 1.20 | 960.00 |
| 10/02/08 | CDB | Research and analyze potential experts; pursue expert and fact witnesses and interview same; pursue discovery. | 3.00 | 1,725.00 |

APP0077

March 30, 2010                     Page   22
8001/152

| Date | Initials | Description | Hours | Amount |
|---|---|---|---|---|
| 10/02/08 | JGT | Contact potential experts. | 3.50 | 1,312.50 |
| 10/02/08 | JJB | Confer with attorney and investigator re case; conduct additional inquiries re identifying potential experts from former I&NS and previous testimony; conduct inquiries and research re                      and submit memorandum re same; conduct inquiries and research re                 and submit memorandum and documents re same. | 6.70 | 2,010.00 |
| 10/02/08 | JSR | Confer re discovery and experts; review additional evidence. | 1.00 | 800.00 |
| 10/03/08 | CDB | Pursue discovery; pursue potential experts and fact witnesses; interview same; review and analyze facts and documents re depositions and motions for summary judgment. | 8.60 | 4,945.00 |
| 10/03/08 | GAT | Conduct research re establishing discriminatory intent; confer re the same; pursue strategy. | 2.30 | 1,150.00 |
| 10/03/08 | JGT | Confer with potential experts. | 1.50 | 562.50 |
| 10/03/08 | JJB | Conduct inquiries re response to FOIA request to Farmers Branch; confer with investigator and attorney re same. | 1.20 | 360.00 |
| 10/03/08 | JJB | Conduct inquiries to identify potential economist expert re burden caused by Farmers Branch actions on individuals. | 2.20 | 660.00 |
| 10/03/08 | JSR | Confer with potential witness; confer re potential experts. | 3.80 | 3,040.00 |
| 10/04/08 | CDB | Draft and revise discovery responses; review and analyze docs; pursue potential expert and fact witnesses. | 2.00 | 1,150.00 |

```
                         March 30, 2010          Page   23
                         8001/152
```

| 10/06/08 | CDB | Pursue expert and fact witnesses; review and analyze facts and law re claims; draft motion for summary judgment; review and analyze client documents. | 5.40 | 3,105.00 |
|---|---|---|---|---|
| 10/06/08 | JGT | Reviewed discovery documents from clients. | 1.60 | 600.00 |
| 10/06/08 | JJB | Confer with investigator re project; conduct inquiries to show a nexus between                ; prepare memo re same. | 4.60 | 1,380.00 |
| 10/06/08 | JSR | Pursue discovery; confer re list of potential witnesses; confer re strategy. | 2.00 | 1,600.00 |
| 10/07/08 | CDB | Pursue discovery; review and analyze client documents; pursue potential expert and fact witnesses. | 6.30 | 3,622.50 |
| 10/07/08 | GAT | Pursue methods for determining discriminatory effect. | .30 | 150.00 |
| 10/07/08 | JGT | Research relevant Supreme Court case law. | 1.10 | 412.50 |
| 10/07/08 | JSR | Revise and finalize letter to opposing counsel re discovery; review memoranda re interviews of witnesses; review answer to Reyes complaint; review evidence in support of motion for summary judgment; analyze Supreme Court case law relevant to motion. | 7.00 | 5,600.00 |
| 10/07/08 | MGH | Confer re legal theories; conduct research re Commerce Clause. | 6.00 | 2,850.00 |
| 10/07/08 | NLT | Research commerce clause; pursue strategy re same. | 3.20 | 768.00 |

March 30, 2010          Page   24
8001/152

| 10/08/08 | CDB | Interview witness and pursue strategy re same; pursue strategy re potential experts; review and analyze  facts and law re claims; pursue discovery. | 6.80 | 3,910.00 |
|---|---|---|---|---|
| 10/08/08 | JSR | Review Supreme Court cases re immigration; prepare inserts to motion for summary judgment. | 10.00 | 8,000.00 |
| 10/08/08 | JZH | Review documentation re investigation of this matter. | 3.60 | 1,440.00 |
| 10/08/08 | MGH | Conduct research re Commerce Clause. | 4.00 | 1,900.00 |
| 10/09/08 | CDB | Pursue strategy re experts, discovery and motion for summary judgment; review and revise discovery responses; review and analyze law. | 7.90 | 4,542.50 |
| 10/09/08 | JGT | Revised discovery responses, spoke with potential expert, pursue strategy,  spoke with client. | 7.30 | 2,737.50 |
| 10/09/08 | JSR | Confer with potential expert witness; prepare sections to summary judgment brief; confer with opposing counsel re extension of pretrial deadlines. | 7.00 | 5,600.00 |
| 10/09/08 | MGH | Conduct additional research re commerce clause. | 1.50 | 712.50 |
| 10/10/08 | CDB | Pursue discovery, witnesses, and claims; prepare discovery responses. | 3.90 | 2,242.50 |
| 10/10/08 | JGT | Revised discovery responses; spoke with client representative; revised order re pre-trial deadlines. | 2.60 | 975.00 |

APP0080

March 30, 2010          Page   25
8001/152

| | | | | |
|---|---|---|---|---|
| 10/10/08 | JSR | Continue preparation of inserts to motion for summary judgment; confer re same. | 4.90 | 3,920.00 |
| 10/13/08 | CDB | Draft and revise discovery responses; research and analyze facts; pursue various pretrial matters. | 3.40 | 1,955.00 |
| 10/13/08 | JGT | Review client documents; review responses to discovery request. | 5.60 | 2,100.00 |
| 10/13/08 | JJB | Conduct inquiries and research documents received from City of Farmers Branch re FOIA request for minutes of FB Revitalization Task Force meetings; prepare report re same. | 1.90 | 570.00 |
| 10/13/08 | JSR | Review and revise discovery requests; confer re same. | .70 | 560.00 |
| 10/14/08 | CDB | Prepare, finalize and serve discovery responses; review and analyze defendant's discovery responses; pursue various discovery issues. | 4.50 | 2,587.50 |
| 10/14/08 | JGT | Revised discovery responses, prepared documents for production, reviewed defendants' discovery responses. | 7.80 | 2,925.00 |
| 10/14/08 | JJB | Conduct and continue inquiries and research documents received from City of Farmers Branch regarding FOIA request for minutes of FB Revitalization Task Force meetings; prepare report re same. | 3.50 | 1,050.00 |
| 10/14/08 | JSR | Confer re discovery and motion to compel; confer re deposition. | .60 | 480.00 |
| 10/15/08 | CDB | Pursue discovery issues; interview potential witness; pursue experts. | 3.80 | 2,185.00 |

March 30, 2010       Page   26
8001/152

| | | | | |
|---|---|---|---|---|
| 10/15/08 | JGT | Review documents produced by defendants. | 3.40 | 1,275.00 |
| 10/15/08 | JJB | Confer with investigator re inquiry; complete research of documents provided; prepare report re same and also various minutes missing; prepare report and documentary exhibit file for attorney. | 4.10 | 1,230.00 |
| 10/15/08 | JSR | Review discovery responses; confer re same. | .90 | 720.00 |
| 10/16/08 | JJB | Confer with investigator re inquiry; prepare binder re same. | .90 | 270.00 |
| 10/17/08 | JJB | Confer with investigator re inquiry and documents produced. | .50 | 150.00 |
| 10/18/08 | CDB | Research and analyze law re motion to compel; draft and revise motion to compel. | 10.30 | 5,922.50 |
| 10/18/08 | JGT | Revise motion to compel. | 4.80 | 1,800.00 |
| 10/18/08 | JGT | Draft motion to compel. | 7.70 | 2,887.50 |
| 10/19/08 | CDB | Draft and revise motion to compel; research and analyze law re same. | 11.50 | 6,612.50 |
| 10/20/08 | CDB | Prepare for deposition; review and revise motion to compel; research and analyze law re same. | 8.50 | 4,887.50 |
| 10/20/08 | JGT | Review client documents; revise motion to compel; draft letter re discovery abuse. | 10.40 | 3,900.00 |
| 10/21/08 | CDB | Prepare for deposition of USCIS; review and analyze defendant's amended discovery responses; review and analyze privilege log; review and revise motion to compel. | 12.00 | 6,900.00 |

March 30, 2010          Page   27
8001/152

| | | | | |
|---|---|---|---|---|
| 10/21/08 | JGT | Revise motion to compel; review client documents; draft deposition topics. | 5.30 | 1,987.50 |
| 10/21/08 | JSR | Prepare for deposition; begin review of draft motion to compel. | 5.00 | 4,000.00 |
| 10/22/08 | CDB | Prepare for, take and pursue strategy re deposition of USCIS. | 13.60 | 7,820.00 |
| 10/22/08 | JGT | Review client documents. | 7.40 | 2,775.00 |
| 10/22/08 | JSR | Prepare additional sections and preliminary statement to motion to compel; review and revise motion; confer re deposition of USCIS representative. | 10.00 | 8,000.00 |
| 10/23/08 | CDB | Review and revise motion to compel; pursue strategy. | 10.70 | 6,152.50 |
| 10/23/08 | JGT | Revise motion to compel. | 7.20 | 2,700.00 |
| 10/23/08 | JSR | Revise motion to compel; review correspondence re discovery; confer re judicial relief. | 2.80 | 2,240.00 |
| 10/24/08 | CDB | Review and revise motion to compel; conduct conference re same; pursue strategy re same. | 13.60 | 7,820.00 |
| 10/24/08 | JGT | Conduct research re motion to compel; revise motion to compel. | 12.20 | 4,575.00 |
| 10/24/08 | JSR | Pursue filing of motion to compel and for sanctions. | .40 | 320.00 |
| 10/27/08 | CDB | Pursue discovery issues; pursue strategy re claims. | 2.60 | 1,495.00 |
| 10/27/08 | JGT | Review order re motion to compel; pursue strategy re conference with opposing counsel. | 1.00 | 375.00 |
| 10/27/08 | JSR | Confer re court's order. | .30 | 240.00 |

APP0083

March 30, 2010                 Page   28
8001/152

| | | | | |
|---|---|---|---|---|
| 10/28/08 | APG | Prepare client documents and pleadings for potential deposition. | 4.00 | 1,400.00 |
| 10/28/08 | CDB | Pursue discovery issues; review and analyze deposition transcript. | 3.80 | 2,185.00 |
| 10/28/08 | JGT | Review documents. | 5.70 | 2,137.50 |
| 10/28/08 | JSR | Review transcript of deposition of USCIS representative. | .50 | 400.00 |
| 10/29/08 | CDB | Prepare for, participate in, and draft letter summarizing meet and confer; review and analyze documents; review and analyze deposition transcript. | 7.60 | 4,370.00 |
| 10/29/08 | JGT | Confer re discovery issues. | .30 | 112.50 |
| 10/29/08 | JSR | Confer re discovery issues. | .40 | 320.00 |
| 10/30/08 | CDB | Review and revise letters re discovery; review and analyze documents; pursue strategy re media. | 4.70 | 2,702.50 |
| 10/30/08 | JGT | Revise letter re discovery; prepare binder re hot documents; pursue strategy re documents produced. | 3.90 | 1,462.50 |
| 10/30/08 | JSR | Review and revise letter to opposing counsel re discovery conference; confer re press inquiries re clients' application processes; review new e-mails reflecting discriminatory intent; confer re same. | 1.30 | 1,040.00 |
| 10/31/08 | CDB | Pursue strategy re claims, discovery and media. | 1.80 | 1,035.00 |
| 11/02/08 | CDB | Pursue strategy re discovery. | .30 | 172.50 |
| 11/03/08 | CDB | Pursue discovery issues. | .50 | 287.50 |

March 30, 2010          Page   29
8001/152

| | | | | |
|---|---|---|---|---|
| 11/03/08 | JGT | Draft letter to defendant re status of discovery in various matters. | 1.20 | 450.00 |
| 11/03/08 | JSR | Confer re follow-up to discovery conference; pursue matters relating to discovery. | .60 | 480.00 |
| 11/04/08 | CDB | Pursue strategy and resolution re discovery issues; review defendant's amended responses. | 1.20 | 690.00 |
| 11/04/08 | JGT | Review correspondence. | .50 | 187.50 |
| 11/05/08 | CDB | Pursue discovery issues and scheduling. | .30 | 172.50 |
| 11/05/08 | JGT | Review revised discovery responses. | .30 | 112.50 |
| 11/06/08 | CDB | Pursue discovery issues. | .30 | 172.50 |
| 11/07/08 | CDB | Pursue strategy re discovery; review and analyze articles. | .40 | 230.00 |
| 11/10/08 | CDB | Pursue discovery issues and scheduling. | .50 | 287.50 |
| 11/11/08 | CDB | Pursue discovery and scheduling issues. | .80 | 460.00 |
| 11/12/08 | CDB | Pursue discovery and scheduling issues. | 1.00 | 575.00 |
| 11/20/08 | CDB | Pursue discovery issues. | .50 | 287.50 |
| 11/21/08 | CDB | Pursue discovery issues. | .30 | 172.50 |
| 11/23/08 | GAT | Prepare for depositions of plaintiffs; conduct review of pleadings and disclosures filed by plaintiffs in related matter; conduct research re standing of plaintiffs to pursue claims against the City of Farmers Branch. | 2.50 | 1,250.00 |

APP0085

March 30, 2010          Page   30
8001/152

| | | | | |
|---|---|---|---|---|
| 11/24/08 | GAT | Prepare for and attend depositions of plaintiffs Arias, Reyes, Garcia, Garza and Edwards. | 6.80 | 3,400.00 |
| 11/24/08 | JGT | Review documents. | 2.50 | 937.50 |
| 11/25/08 | CDB | Revise letter. | .20 | 115.00 |
| 11/25/08 | JGT | Draft letter re discovery. | 2.30 | 862.50 |
| 11/25/08 | JSR | Review and revise letter to opposing counsel; review amended discovery responses. | .40 | 320.00 |
| 12/01/08 | CDB | Review and analyze discovery responses; review letter from opposing counsel. | 1.40 | 805.00 |
| 12/01/08 | JGT | Review documents; draft response re discovery related questions. | .90 | 337.50 |
| 12/03/08 | CDB | Pursue strategy re discovery. | .30 | 172.50 |
| 12/04/08 | CDB | Pursue scheduling and strategy re depositions. | 1.50 | 862.50 |
| 12/04/08 | GAT | Confer re scheduling of depositions. | .20 | 100.00 |
| 12/04/08 | JSR | Pursue matters re deposition scheduling. | .60 | 480.00 |
| 12/05/08 | CDB | Pursue discovery issues and strategy. | .60 | 345.00 |
| 12/05/08 | GAT | Confer re deposition schedules for city employees. | .30 | 150.00 |
| 12/08/08 | CDB | Pursue strategy re depositions. | 1.00 | 575.00 |
| 12/09/08 | CDB | Pursue strategy re depositions. | .50 | 287.50 |
| 12/10/08 | CDB | Pursue scheduling of discovery; pursue strategy re depositions. | .50 | 287.50 |

March 30, 2010
8001/152
Page   31

| | | | | |
|---|---|---|---|---|
| 12/10/08 | JSR | Review communications re depositions. | .30 | 240.00 |
| 12/11/08 | CDB | Pursue discovery. | .40 | 230.00 |
| 12/11/08 | GAT | Confer re deposition schedule | .40 | 200.00 |
| 12/12/08 | CDB | Pursue deposition issue. | .80 | 460.00 |
| 12/12/08 | GAT | Confer re deposition preparation. | 1.10 | 550.00 |
| 12/12/08 | JGT | Pursue strategy re depositions. | .20 | 75.00 |
| 12/12/08 | JSR | Confer re selection of experts. | .30 | 240.00 |
| 12/15/08 | CDB | Pursue strategy re depositions. | .50 | 287.50 |
| 12/15/08 | GAT | Prepare for depositions; conduct depositions of defendant's librarian and former assistant city manager; pursue summary of librarian's deposition. | 7.20 | 3,600.00 |
| 12/15/08 | JSR | Confer re deposition testimony; review article re census statistics for Farmers Branch; confer re same. | .40 | 320.00 |
| 12/16/08 | GAT | Prepare for depositions of city's police chief; review deposition transcripts from city's librarian and former city manager. | 1.50 | 750.00 |
| 12/17/08 | CDB | Pursue strategy re depositions. | .70 | 402.50 |
| 12/17/08 | GAT | Prepare for and conduct deposition of city's police chief; pursue strategy re deposition of building inspector; pursue discovery related issues. | 7.80 | 3,900.00 |
| 12/17/08 | JGT | Pursue strategy re depositions. | 1.20 | 450.00 |
| 12/18/08 | CDB | Pursue strategy re depositions. | .50 | 287.50 |

March 30, 2010                    Page   32
8001/152

| 12/18/08 | GAT | Pursue deposition preparation; prepare deposition summaries of city librarian and former assistant city manager. | 4.20 | 2,100.00 |
|----------|-----|---|---|---|
| 12/18/08 | JGT | Prepare for deposition of J. Olk. | 8.00 | 3,000.00 |
| 12/18/08 | JJB | Confer with attorney re e-discovery of documents at Farmers Branch and suggestions made for pertinent expert; confer with experts re same. | .50 | 200.00 |
| 12/19/08 | GAT | Prepare summary of depositions; confer re document requests. | 3.10 | 1,550.00 |
| 12/19/08 | JGT | Deposition re J. Olk. | 9.00 | 3,375.00 |
| 12/19/08 | JSR | Confer re deposition of building inspector; pursue matters re deposition scheduling. | .30 | 240.00 |
| 12/22/08 | CDB | Pursue strategy re depositions. | .50 | 287.50 |
| 12/22/08 | GAT | Conduct review of deposition transcripts; prepare requests for documents identified in prior depositions; conduct legal research re english only ordinance. | 2.20 | 1,100.00 |
| 12/22/08 | JSR | Review interview with T. O'Hare and recent press coverage of immigration issue; confer re deposition schedule. | .40 | 320.00 |
| 12/23/08 | CDB | Pursue strategy re depositions. | .40 | 230.00 |
| 12/24/08 | GAT | Review and revise correspondence to include document request for documents identified as existing by the chief of police; conduct review of deposition outlines. | .80 | 400.00 |
| 12/24/08 | JGT | Compile "hot" documents. | .60 | 225.00 |

March 30, 2010                 Page   33
8001/152

| Date | Init | Description | Hours | Amount |
|---|---|---|---|---|
| 12/29/08 | CDB | Pursue discovery. | .60 | 345.00 |
| 12/29/08 | GAT | Conduct review of deposition transcripts of Chief of Police and former Assistant City Manager for trial preparation; prepare summaries of the same; prepare requests for documents. | 4.10 | 2,050.00 |
| 12/30/08 | CDB | Pursue discovery. | .40 | 230.00 |
| 12/30/08 | GAT | Prepare requests for discovery to City; conduct review of deposition transcripts for identified by defendant's witnesses of notes and other documents not produced in violation of defendant's discovery obligations. | 1.40 | 700.00 |
| 12/30/08 | JGT | Revise letter re discovery. | .70 | 262.50 |
| 12/31/08 | CDB | Pursue discovery. | .20 | 115.00 |
| 12/31/08 | JGT | Revise letter re discovery. | .30 | 112.50 |

FOR CURRENT SERVICES RENDERED        1,326.4   $689,309.00

TOTAL FEES                                      $689,309.00

March 30, 2010          Page   34
8001/152

| Professionals | Rate | Hours | Amount |
|---|---|---|---|
| ADAM P. GREGSTON * | 350.00 | 4.00 | 1,400.00 |
| ANAND R. SAMBHWANI | 240.00 | 30.70 | 7,368.00 |
| BENJAMIN RIEMER | 240.00 | 9.20 | 2,208.00 |
| C. DUNHAM BILES | 550.00 | 101.40 | 55,770.00 |
| C. DUNHAM BILES | 575.00 | 333.00 | 191,475.00 |
| GREGGORY A. TEETER | 500.00 | 259.00 | 129,500.00 |
| JACK TERNAN | 275.00 | 47.30 | 13,007.50 |
| JACK TERNAN | 375.00 | 229.20 | 85,950.00 |
| JAMES S. RENARD | 800.00 | 201.80 | 161,440.00 |
| JOHN BOADEN * | 250.00 | 4.00 | 1,000.00 |
| JOHN BOADEN * | 300.00 | 52.50 | 15,750.00 |
| JOHN BOADEN * | 400.00 | .50 | 200.00 |
| JOHN H. TOM * | 400.00 | 1.20 | 480.00 |
| JUSTIN B. HOLTON * | 400.00 | 3.60 | 1,440.00 |
| MATTHEW E. LAST | 375.00 | 2.50 | 937.50 |
| MICHAEL C. VEESER | 475.00 | 9.70 | 4,607.50 |
| MICHAEL D. HOGUE * | 350.00 | 1.40 | 490.00 |
| MICHAEL L. SMITH | 675.00 | 1.70 | 1,147.50 |
| MILTON HAMMOND | 475.00 | 30.00 | 14,250.00 |
| NICOLE L. TONG | 240.00 | 3.70 | 888.00 |

Total Fees                                   $689,309.00

## Summary of Other Charges

| Third-Party Charges | Total |
|---|---|
| Court Reporting Services | 3,881.15 |
| Delivery | 429.99 |
| Filing Fee | 1,850.00 |
| Hotel/Motel/Lodging Expense | 601.13 |
| Index & Abstracting Services | 776.35 |
| Legal Research | 4,677.00 |
| Parking | 16.00 |
| Professional Services | 2,500.00 |
| Taxi/Tips | 24.00 |
| Transportation | 258.98 |
| Travel Expenses | 2,395.76 |

## In-House Service Charges

| | |
|---|---|
| Color Prints (1) | 836.40 |

APP0090

```
                          March 30, 2010        Page   35
                          8001/152


Document Index/Imaging/Q.C. (1)                        1,127.50
Document Production (1)                                1,215.00
Litigation Support Services (1)                       24,707.50
Photocopies  (1)                                       6,605.80
Postage                                                   11.20
Scanning (1)                                           1,066.60
Trial/Depo/Hearing Prep. (1)                           6,510.00
Word Processing (1)                                   20,560.00

                    Totals                           $80,050.36
                    TOTAL COSTS                      $80,050.36




                    CURRENT TOTAL INVOICE       $ 769,359.36



* NON-LAWYERS
** NOT YET ADMITTED TO THE BAR
(LC) LAW CLERK
(1)  These charges may exceed actual cost of providing services.
```

# EXHIBIT
# E

APP0092

PRE-FINAL BILL

Mary Miller Smith
STOREFRONT (MLK)
1717 Main Street
Dallas, TX 75201

March 24, 2010
Invoice No. 46068
8001/152

FOR PROFESSIONAL SERVICES RENDERED:
8001/152
STOREFRONT (MLK)/Villas at Parkside, et. al. v. The City of Farmers
Branch

| Date | | Description | Hours | Amount |
|---|---|---|---|---|
| 01/01/09 | JGT | Pursue strategy re depositions. | .10 | 37.50 |
| 01/02/09 | GAT | Prepare and revise deposition summaries; pursue discovery. | 1.00 | 500.00 |
| 01/04/09 | JGT | Review and revise letter to opposing counsel re discovery; reviewed and gathered documents in preparation for upcoming depositions. | 3.10 | 1,162.50 |
| 01/05/09 | CDB | Pursue strategy re depositions. | .40 | 230.00 |
| 01/05/09 | GAT | Prepare and revise deposition summaries; pursue discovery. | 1.00 | 500.00 |
| 01/05/09 | JGT | Review and revise letter re discovery; prepare for deposition re L. Groomer. | 3.20 | 1,200.00 |
| 01/06/09 | CDB | Pursue strategy re depositions. | .40 | 230.00 |
| 01/06/09 | GAT | Prepare and revise deposition summaries; pursue discovery. | 1.00 | 500.00 |

APP0093

March 24, 2010          Page    2
8001/152

| | | | | |
|---|---|---|---|---|
| 01/06/09 | JGT | Deposition of L. Groomer. | 9.90 | 3,712.50 |
| 01/06/09 | JSR | Confer re upcoming depositions. | .30 | 240.00 |
| 01/07/09 | CDB | Pursue strategy re discovery and depositions. | .50 | 287.50 |
| 01/07/09 | GAT | Prepare and revise deposition summaries; pursue discovery. | 1.00 | 500.00 |
| 01/07/09 | JSR | Confer re deposition of D. Koch. | .30 | 240.00 |
| 01/08/09 | GAT | Prepare and revise deposition summaries; pursue discovery. | 1.00 | 500.00 |
| 01/08/09 | JGT | Reviewed recordings of city council meetings. | 2.10 | 787.50 |
| 01/09/09 | CDB | Pursue strategy re depositions. | .50 | 287.50 |
| 01/09/09 | GAT | Attend deposition of former Mayor Phelps. | 8.00 | 4,000.00 |
| 01/09/09 | JGT | Prepare for depositions. | 1.60 | 600.00 |
| 01/10/09 | GAT | Prepare and revise deposition summaries; pursue discovery. | 3.00 | 1,500.00 |
| 01/11/09 | GAT | Prepare and revise deposition summaries; pursue discovery. | 3.00 | 1,500.00 |
| 01/11/09 | JGT | Prepare for depositions of B. Robinson, T. Scott and C. Peters. | 3.20 | 1,200.00 |
| 01/12/09 | GAT | Prepare and revise deposition summaries; pursue discovery. | 1.00 | 500.00 |
| 01/12/09 | JGT | Prepare for deposition of B. Robinson. | 5.70 | 2,137.50 |
| 01/13/09 | GAT | Prepare and revise deposition summaries; pursue discovery. | 1.00 | 500.00 |
| 01/13/09 | JGT | Attend deposition of B. Robinson; prepare for deposition of T. Scott. | 11.80 | 4,425.00 |

APP0094

March 24, 2010           Page    3
8001/152

| 01/14/09 | CDB | Pursue strategy re depositions and discovery. | .90 | 517.50 |
|---|---|---|---|---|
| 01/14/09 | GAT | Prepare and revise deposition summaries; pursue discovery. | 1.00 | 500.00 |
| 01/14/09 | JGT | Attend deposition of T. Scott; prepare for deposition of C. Peters. | 12.00 | 4,500.00 |
| 01/15/09 | CDB | Review and analyze deposition transcripts; pursue strategy re depositions. | 1.30 | 747.50 |
| 01/15/09 | GAT | Prepare and revise deposition summaries; pursue discovery. | 1.00 | 500.00 |
| 01/15/09 | JGT | Attend deposition of C. Peters, review deposition transcripts, prepare for upcoming depositions | 10.10 | 3,787.50 |
| 01/16/09 | CDB | Pursue strategy. | .40 | 230.00 |
| 01/16/09 | JGT | Review deposition transcripts; prepare for deposition of G. Greer; prepare for upcoming depositions. | 1.80 | 675.00 |
| 01/17/09 | GAT | Deposition preparation. | 3.00 | 1,500.00 |
| 01/17/09 | JGT | Prepare for deposition of G. Greer; prepare for deposition of E. Bonneau. | 2.40 | 900.00 |
| 01/18/09 | JGT | Prepare for deposition of G. Greer; prepare for upcoming depositions. | 2.80 | 1,050.00 |
| 01/19/09 | CDB | Pursue strategy re depositions. | .50 | 287.50 |
| 01/19/09 | GAT | Deposition preparation. | 3.00 | 1,500.00 |
| 01/19/09 | JGT | Attended deposition of G. Greer, review deposition transcripts; prepare for deposition of E. Bonneau. | 12.00 | 4,500.00 |

APP0095

```
                          March 24, 2010              Page   4
                          8001/152
```

| 01/20/09 | GAT | Deposition preparation. | 3.00 | 1,500.00 |
|---|---|---|---|---|
| 01/20/09 | JGT | Review deposition transcripts; prepare for upcoming depositions. | 4.20 | 1,575.00 |
| 01/21/09 | GAT | Deposition preparation. | 3.00 | 1,500.00 |
| 01/21/09 | JGT | Review deposition transcripts; prepare for upcoming depositions; prepare for client meeting. | 3.20 | 1,200.00 |
| 01/22/09 | CDB | Pursue strategy re depositions. | .40 | 230.00 |
| 01/22/09 | GAT | Prepare for and attend deposition. | 7.80 | 3,900.00 |
| 01/22/09 | JGT | Prepare for deposition of E. Bonneau; review deposition transcript; confer with experts. | 7.70 | 2,887.50 |
| 01/23/09 | CDB | Pursue strategy re depositions; prepare for same. | 4.60 | 2,645.00 |
| 01/23/09 | GAT | Pursue deposition summaries for summary judgment practice. | 2.60 | 1,300.00 |
| 01/23/09 | JGT | Conduct deposition of E. Bonneau, draft and revise memorandum summarizing deposition, prepare for deposition of T. O'Hare. | 11.60 | 4,350.00 |
| 01/24/09 | CDB | Prepare for depositons; pursue strategy re discovery. | 4.00 | 2,300.00 |
| 01/24/09 | GAT | Conduct review of evidence in preparation for summary judgment practice. | 2.50 | 1,250.00 |
| 01/24/09 | JGT | Reviewed deposition transcripts. | .50 | 187.50 |
| 01/25/09 | CDB | Prepare for O'Hare deposition. | 6.50 | 3,737.50 |
| 01/25/09 | GAT | Conduct review of evidence in preparation for summary judgment practice; confer re deposition. | 2.70 | 1,350.00 |

APP0096

March 24, 2010       Page   5
8001/152

| | | | | |
|---|---|---|---|---|
| 01/25/09 | JGT | Review deposition transcripts; revise memorandum containing quotations from depositions. | 4.30 | 1,612.50 |
| 01/26/09 | CDB | Defendant J. Smith's deposition; prepare for O'Hare's deposition. | 12.00 | 6,900.00 |
| 01/26/09 | GAT | Pursue depositions; conduct review of evidence in preparation for summary judgment practice. | 4.20 | 2,100.00 |
| 01/26/09 | JGT | Prepare for deposition of T. O'Hare, finalize memorandum with quotations from prior depositions. | 8.70 | 3,262.50 |
| 01/26/09 | JSR | Confer re deposition of T. O'Hare; review summary of depositions taken to date. | 1.30 | 1,040.00 |
| 01/26/09 | MGH | Confer re strategy; review depositions and identify quotes. | 6.50 | 3,087.50 |
| 01/27/09 | CDB | Prepare for and take T. O'Hare deposition; prepare for City Representative deposition. | 17.00 | 9,775.00 |
| 01/27/09 | GAT | Conduct review of evidence in preparation for summary judgment practice. | 1.40 | 700.00 |
| 01/27/09 | JGT | Prepare for deposition of 30(b)(6) representative, pursue strategy regarding motion for protection. | 9.90 | 3,712.50 |
| 01/27/09 | JSR | Confer re deposition of T. O'Hare; confer re preparation for Rule 30(B)(6) witness; prepare letter re mediators. | 1.60 | 1,280.00 |
| 01/27/09 | MGH | Review depositions and identify quotes. | 6.50 | 3,087.50 |
| 01/28/09 | CDB | Prepare for 30(b)(6) deposition; pursue discovery issues. | 7.00 | 4,025.00 |

APP0097

```
                         March 24, 2010            Page    6
                         8001/152
```

| Date | | Description | Hours | Amount |
|---|---|---|---|---|
| 01/28/09 | GAT | Conduct review and summary of councilman's deposition; confer re strategy; conduct review of evidence for summary judgment practice. | 1.40 | 700.00 |
| 01/28/09 | JGT | Prepare for deposition of 30(b)(6) representative. | 4.60 | 1,725.00 |
| 01/28/09 | JSR | Confer re Rule 30(B)(6) witnesses; confer re summary judgment. | .50 | 400.00 |
| 01/28/09 | MGH | Review depositions and identify quotes. | 6.00 | 2,850.00 |
| 01/29/09 | CDB | Prepare for 30(b)(6) deposition. | 9.00 | 5,175.00 |
| 01/29/09 | GAT | Conduct review and preparation of evidence from council members for summary judgment practice; confer re strategy of deposition of 30(b)(6) witness; conduct review of depositions. | 4.20 | 2,100.00 |
| 01/29/09 | JGT | Prepare for deposition of 30(b)(6) representative, draft correspondence regarding authenticity of produced documents. | 1.80 | 675.00 |
| 01/29/09 | MGH | Review depositions and identify quotes; confer re strategy. | 10.00 | 4,750.00 |
| 01/30/09 | CDB | Prepare for and take 30(b)(6) deposition. | 11.50 | 6,612.50 |
| 01/30/09 | JGT | Review deposition transcripts, organize exhibits for motion for summary judgment. | .30 | 112.50 |
| 01/30/09 | JSR | Confer re Rule 30(B)(6) deposition and summary judgment. | .30 | 240.00 |
| 01/30/09 | MGH | Review pre-trial brief. | 1.00 | 475.00 |

APP0098

```
                         March 24, 2010          Page    7
                         8001/152
```

| | | | | |
|---|---|---|---|---|
| 02/02/09 | CDB | Pursue strategy re motion to compel and motion for summary judgment. | 1.30 | 747.50 |
| 02/02/09 | GAT | Conduct research re 30(b)(6) deposition; prepare motion to compel; pursue motion to compel; conduct review of areas of inquiry; conduct review of representations made by counsel for the City of Farmers Branch during prior discovery disputes. | 8.60 | 4,300.00 |
| 02/02/09 | JGT | Begin draft of motion for summary judgment. | .90 | 337.50 |
| 02/02/09 | JSR | Confer re motion for summary judgment; begin review of materials for drafting section to motion. | 1.00 | 800.00 |
| 02/03/09 | CDB | Pursue strategy re discovery and motion for summary judgment. | .40 | 230.00 |
| 02/03/09 | GAT | Conduct review of discovery abused by the City; prepare motion to compel. | 2.00 | 1,000.00 |
| 02/03/09 | JGT | Conduct research and revise motion for summary judgment. | 2.70 | 1,012.50 |
| 02/03/09 | JSR | Prepare preliminary statement to motion for summary judgment; review and revise additional sections to motion; confer re same. | 3.50 | 2,800.00 |
| 02/04/09 | JGT | Conduct research re law and analyze facts; revise motion for summary judgment. | 10.80 | 4,050.00 |
| 02/04/09 | JSR | Pursue matters re summary judgment motion. | .30 | 240.00 |
| 02/05/09 | CDB | Pursue motion for summary judgment and discovery issues. | 1.00 | 575.00 |

APP0099

March 24, 2010
8001/152

Page    8

| Date | Initials | Description | Hours | Amount |
|---|---|---|---|---|
| 02/05/09 | JGT | Conduct research of law and analyze facts; revise motion for summary judgment, draft motion and order re extension of deadlines, draft letter to opposing counsel re same. | 7.30 | 2,737.50 |
| 02/05/09 | JSR | Confer re extension of time to file summary judgment motion; confer re disclosure of new fact witness and potential expert witness. | .30 | 240.00 |
| 02/06/09 | CDB | Pursue discovery issues; review and revise motion for summary judgment. | 4.50 | 2,587.50 |
| 02/06/09 | JGT | Revised motion for summary judgment, drafted motion to extend pre-trial deadlines. | 3.70 | 1,387.50 |
| 02/06/09 | JJB | Conduct inquiries regarding N. Jacobs and prepare results for passing to attorney re same. | 2.20 | 880.00 |
| 02/06/09 | JSR | Pursue matters re summary judgment motions; confer re same. | .50 | 400.00 |
| 02/07/09 | CDB | Review and revise motion for summary judgment. | 2.00 | 1,150.00 |
| 02/07/09 | JGT | Revise motion for summary judgment. | 2.70 | 1,012.50 |
| 02/08/09 | CDB | Review and revise motion for summary judgment. | 1.20 | 690.00 |
| 02/08/09 | JGT | Revise motion for summary judgment. | 2.50 | 937.50 |
| 02/08/09 | JSR | Pursue matters re motion for summary judgment. | .50 | 400.00 |
| 02/09/09 | CDB | Review and revise brief; pursue discovery issues. | 4.70 | 2,702.50 |

March 24, 2010          Page    9
8001/152

| Date | Init | Description | Hours | Amount |
|---|---|---|---|---|
| 02/09/09 | GAT | Pursue discovery issues in dispute; confer re strategy for requesting same. | 3.40 | 1,700.00 |
| 02/09/09 | JGT | Conduct research re motion for summary judgment and revise same. | 8.50 | 3,187.50 |
| 02/09/09 | JJB | Conduct inquiries and research re N. Jacobs and background, current employment and place of residence; prepare report re same for attorney. | 3.60 | 1,440.00 |
| 02/09/09 | JSR | Review and revise brief in support of motion for summary judgment; draft additional sections; confer re same. | 10.00 | 8,000.00 |
| 02/10/09 | CDB | Review and revise motion for summary judgment; pursue discovery issues. | 11.20 | 6,440.00 |
| 02/10/09 | GAT | Prepare motion to compel; prepare issues in dispute statement for motion to compel. | 5.70 | 2,850.00 |
| 02/10/09 | JGT | Conduct and analyze research re motion for summary judgment; revise motion for summary judgment. | 12.00 | 4,500.00 |
| 02/10/09 | JJB | Conduct inquiries re N. Jacobs and trace and identify cases involving same, plus discipline measures etc initiated; prepare details for report to attorney re same. | 4.80 | 1,920.00 |
| 02/10/09 | JSR | Revise and finalize brief re summary judgment; review declaration of J. Ternan; confer re filing. | 10.00 | 8,000.00 |
| 02/11/09 | CDB | Pursue discovery issues; pursue issues re motion for summary judgment. | 3.80 | 2,185.00 |

APP0101

                                    March 24, 2010          Page  10
                                    8001/152


02/11/09   JGT    Attend and participate in meeting      3.30      1,237.50
                  with opposing counsel review
                  court's order re motion for
                  summary judgment filings and
                  deadlines.

02/11/09   JSR    Confer re motion for summary           1.70      1,360.00
                  judgment; review order from court;
                  confer re discovery conference re
                  new fact witness; review
                  background information re same.

02/12/09   BXR    Draft standard re                     11.10      3,052.50
                  review and organize documents;
                  draft facts section for motion on

02/12/09   CDB    Pursue strategy re discovery           1.20        690.00
                  dispute; review and analyze facts
                  and law re motion for summary
                  judgment and

02/12/09   GAT    Review deposition transcripts of       6.80      3,400.00
                  30(b)(6) witness and councilman
                  O'Hare and prepare motion to
                  compel re the same; attention to
                  preparing list of discovery areas
                  in dispute.

02/12/09   JGT    Review of all filed motions.            .40        150.00

02/12/09   JJB    Confer with attorney re               3.70       1,480.00
                  investigation needed in respect of
                  N. Jacobs; conduct inquiries re
                  same and confer with resources
                  regarding subject; conduct
                  inquiries re properties owned by
                  N. Jacobs; conduct research re
                  potential witnesses and current
                  status of N. Jacobs.

02/12/09   JSR    Review background materials re          .80        640.00
                  newly-disclosed fact witness;
                  confer re same.

APP0102

March 24, 2010          Page   11
8001/152

| | | | | |
|---|---|---|---|---|
| 02/13/09 | BXR | Review and organize documents; draft facts section for | 10.10 | 2,777.50 |
| 02/13/09 | GAT | Prepare motion to compel; confer re document requests; prepare joint filing re disputed discovery issues. | 3.80 | 1,900.00 |
| 02/13/09 | JGT | Pursue strategy re N. Jacobs. | 1.90 | 712.50 |
| 02/13/09 | JJB | Conduct inquiries re N. Jacobs and current employment etc. | 2.90 | 1,160.00 |
| 02/13/09 | MGH | Confer re strategy; conduct legal research re summary judgment issues. | 3.00 | 1,425.00 |
| 02/16/09 | CDB | Review and revise joint submission; pursue strategy re motions for summary judgment; review and analyze depositions. | 2.60 | 1,495.00 |
| 02/16/09 | GAT | Review and revise agreement; conduct research re ; conduct review of defendant's representative's deposition; prepare insert to discovery dispute. | 2.70 | 1,350.00 |
| 02/16/09 | JGT | Revise submission re discovery disputes. | 1.30 | 487.50 |
| 02/16/09 | MGH | Conduct legal research re summary judgment issues. | 3.00 | 1,425.00 |
| 02/17/09 | CDB | Review and analyze issues re discovery and motion for summary judgment. | 1.30 | 747.50 |
| 02/17/09 | GAT | Pursue review of cds and dvds. | .50 | 250.00 |
| 02/17/09 | JGT | Revise joint submission. | 4.10 | 1,537.50 |

APP0103

March 24, 2010
8001/152                                        Page   12

| Date | Initials | Description | Hours | Amount |
|------|----------|-------------|-------|--------|
| 02/17/09 | JJB | Conduct inquiries and research re N. Jacobs and current employment etc. | 2.10 | 840.00 |
| 02/17/09 | MGH | Conduct legal research re summary judgment issues. | 4.00 | 1,900.00 |
| 02/18/09 | CDB | Review and revise joint submission. | 1.40 | 805.00 |
| 02/18/09 | JSR | Review proposed submission to court re discovery disputes; confer re same. | .60 | 480.00 |
| 02/18/09 | MGH | Conduct legal research re summary judgment issues. | 5.00 | 2,375.00 |
| 02/19/09 | CDB | Review and revise joint submission, pursue strategy re same. | 1.80 | 1,035.00 |
| 02/19/09 | GAT | Conduct review of deposition transcripts of designated representative; confer re strategy; pursue objections to preparedness of designated witness. | 1.70 | 850.00 |
| 02/19/09 | JGT | Revise joint submission; participate in conference call with all counsel. | 4.30 | 1,612.50 |
| 02/19/09 | JJB | Consult with attorney re same and prepare documents and forward same to attorney re | 2.20 | 880.00 |